**Michael Jay BAYS, Appellant**

**v.**

**The STATE of Texas.**

**No. PD–1909–11.**

Court of Criminal Appeals of Texas.

April 17, 2013.

---

George McCall Secrest, Jr., Attorney at Law, Houston, TX, for Appellant.

Zan Colson Brown, Assistant District Attorney, Longview, TX, Lisa C. McMinn, State's Attorney, Austin, TX, for State.

## OPINION

ALCALA, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON, and COCHRAN, JJ., joined.

█ On the State's petition for discretionary review, we determine that Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, is a hearsay exception statutorily limited to live testimony of the outcry witness.[1] *See* TEX.

---

1. The outcry statute creates a hearsay exception for a child's first outcry of sexual abuse to an adult. TEX.CODE CRIM. PROC. art. 38.072, § 2(a). The statute applies only in prosecutions of specified sexual offenses if committed against a child younger than 14 years of age. *Id.* at § 1. The statute applies only to out-of-court statements that (1) "describe the alleged

CODE CRIM. PROC. art. 38.072. The child-complainant's own videotaped statement does not meet the requirements for being admitted under that statute. *Id.* Because the trial court impermissibly admitted the child's videotaped statement under the outcry statute, we affirm the court of appeals's judgment reversing the conviction of Michael Jay Bays, appellant, for indecency with a child by contact. *See Bays v. State*, No. 06–10–00115–CR, 2011 WL 6091773, at *6 (Tex.App.–Texarkana Dec. 7, 2011) (not designated for publication); TEX. PENAL CODE § 21.11(a)(1).

## I. Background

Anne[2] was six years old at the time of the incident with appellant, her step-grandfather. Anne and her young relatives, Emily and Charlotte, were watching television with appellant in his living room.[3] While Charlotte and Emily sat across the room from them, appellant touched Anne's genitals as she sat on his lap. When she pushed his hand away, he restrained Anne so that she could not leave. Charlotte started yelling, "He won't let her go, he won't let her go." The commotion was heard by several adults who were outside of the house, including appellant's wife, who is also Anne's grandmother, and Anne's parents.

After the adults entered the house, Charlotte announced that Anne had something to tell everyone, and immediately offered that appellant had touched Anne "down there." Anne's grandmother then privately questioned Anne in another room. Testimony was inconsistent as to what Anne told her grandmother about the incident at that time.[4]

About one year later, Anne and her cousin, Charlotte, each revealed to their mothers that appellant had sexually abused them. Anne, Charlotte and their mothers met to discuss the matter. Anne told the two mothers that appellant had

offense," (2) are "made by the child," and (3) are "made to the first person, 18 years of age or older, other than the defendant, to whom the child ... made a statement about the offense." *Id.* at § 2(a). It further requires that the adverse party be notified of the name of the outcry witness, that the adverse party be provided with a "written summary of the statement," that the trial court hold a hearing to determine whether the child's statement is reliable, and that the child testify or be available to testify at trial. *See id.* at § 2(b). If both Subsections (a) and (b) are satisfied, then the child's outcry statement "is not inadmissible because of the hearsay rule." *Id.* Outcry statements are considered substantive evidence of the crime. *Martinez v. State*, 178 S.W.3d 806, 811 (Tex.Crim.App.2005). The outcry statute has been amended three times since proceedings commenced against appellant. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 284, § 1; Act of May 27, 2009, 81st Leg., R.S., ch. 710, §§ 1–2; Act of April 11, 2011, 82nd Leg., ch. 1, § 2.07. None of these recent amendments alter the statute's application to this case. We shall refer to the current text of the outcry statute.

2. To protect the identities of the children involved in this case, the court of appeals employed the pseudonyms "Anne" to refer to the complainant and "Emily" and "Charlotte" to refer to her minor relatives, who were also complainants in two companion cases against appellant. We continue to employ those pseudonyms in this opinion.

3. Charlotte is appellant's step-granddaughter and was approximately twelve years old at the time of the incident. Emily is appellant's daughter and was approximately eight years old at the time of the incident.

4. Anne's grandmother testified that Anne said appellant did not touch her. Anne's mother stated that Anne was embarrassed or shocked and refused to say either way at that time whether appellant had touched her. During Anne's videotaped interview, she stated that she told her grandmother that appellant touched her "tuti-tu" on the day of the incident, but that she didn't tell anyone else at that time because she was confused and "didn't know what to do."

touched her genitals while she was sitting on his lap, and they reported the abuse to the police. During the investigation, police officers asked Kelsey Drennan, an investigator for the Texas Department of Family and Protective Services (TDFPS), to interview Anne, Charlotte and Emily. All three interviews were conducted separately on the same day and were videotaped.

During her interview with Anne, Drennan asked, "Is there anything that we're supposed to talk about?" Anne responded, "Not that I know of." Drennan then asked Anne if anyone had ever tried to look at or touch her "hiney" or "tuti-tu," which was the word used by Anne for her female sexual organ. Anne responded, "just my grandpa, just once, that's all I can remember," referring to appellant. Drennan inquired whether he touched her tuti-tu on the outside or inside of her clothes. Anne replied, "He went inside." She pointed at the waistband of her shorts and made a downward motion to indicate that appellant had reached inside her shorts. To confirm, Drennan asked Anne if appellant touched her on her skin or on top of her clothes, to which Anne replied, "skin." Anne stated that appellant did not put his hand inside her tuti-tu but did touch the surface. Anne stated that the touching occurred while she was sitting "on his lap" on the couch in her grandmother's house.

Appellant was charged with indecency with a child by contact and he pleaded not guilty. The case was tried to the bench along with other accusations of sexual abuse committed against Emily and Charlotte. At trial, the State called Drennan as its designated outcry witness and offered the 30–minute videotape of Anne's interview. Over appellant's hearsay objection, the trial court admitted the recording in its entirety, and it was played for the court. Drennan did not testify about any of Anne's outcry statements; the sole evidence of the statements Anne made to Drennan was the videotape of the interview.

After the videotape was played, Anne testified. Her description of the incident was largely consistent with that contained in the videotape except she testified that the touching was over her clothes. Anne acknowledged that the touching could have been accidental, but stated that appellant had lied when he said he did not touch her.

In his defense, appellant testified that he could have accidentally touched Anne's genital area on the outside of her clothing while he was playing with her, but he denied that he touched her under her clothes. Disbelieving the defense, the trial court found appellant guilty and sentenced him to ten years' imprisonment.[5]

■ The court of appeals reversed the conviction. It held that the videotape was inadmissible hearsay that did not fall within the type of hearsay permitted under the outcry statute. *Bays*, 2011 WL 6091773, at *3. Relying on its prior decision in *Dunn v. State*, the court of appeals noted that "the outcry statute does not anticipate or provide for the admission of the video statements." *Id.* (citing 125 S.W.3d 610, 614 (Tex.App.–Texarkana 2003, no pet.)). The court of appeals concluded that the outcry statute does not "contemplate[ ]

5. Appellant was additionally found guilty of sexual offenses committed against Charlotte, but was acquitted of the indecency charge involving Emily. Appellant's convictions for continuous sexual assault of a child and sexual assault of a child involving Charlotte were affirmed on appeal, resulting in sentences of twenty-five and ten years' imprisonment respectively. *See Bays v. State*, 06–10–00114–CR, 2011 WL 6091757 (Tex.App.–Texarkana Dec. 7, 2011, pet. ref'd).

that a videotape of the outcry will be introduced. It clearly contemplates that a person, subject to confrontation and cross-examination, will testify about what was said." *Id.*[6] We granted the State's petition for discretionary review to determine whether the court of appeals erred by holding that the outcry statute does not permit the admission of video statements.[7] The State argues that the videotaped interview should be admissible under the outcry statute because the statute does not expressly require that the child's statements be related through witness testimony. The State further argues that the statute's underlying goal of admitting reliable statements is best served by permitting admission of the videotaped interview. In response, appellant argues that the statutory hearsay exception for a child's outcry statements applies only when those statements are conveyed through the testimony of the proper outcry witness, and that other forms of evidence, such as videotapes, do not fall within the hearsay exception for outcry evidence.

## II. Analysis

Both the State and appellant offer conflicting, but plausible, interpretations of the outcry statute. Because we determine that the statute is ambiguous with respect to what form the outcry evidence must take when introduced at trial, we proceed to consider the appropriate extra-textual factors. We conclude that the statutory hearsay exception for outcry evidence applies only when the child's statements are conveyed through the testimony of the properly designated outcry witness.

### A. Law Applicable to Statutory Interpretation

■■■ Statutory interpretation is a question of law that we review *de novo*. *Nguyen v. State*, 359 S.W.3d 636, 641 (Tex. Crim.App.2012). In interpreting statutes, we seek to effectuate the Legislature's collective intent and presume that the Legislature intended for the entire statutory scheme to be effective. *See* Tex. Gov't Code § 311.021; *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). To achieve this goal, we necessarily focus our attention on the literal text of the statute and attempt to discern the objective meaning of that text at the time of its enactment. *Nguyen*, 359 S.W.3d at 642. If the language is unambiguous, our analysis

---

6. The court of appeals found the error harmful because, aside from the recorded interview, "there was not overwhelming evidence of guilt." *Bays v. State*, No. 06–10–00115–CR, 2011 WL 6091773, at *6 (Tex.App.–Texarkana Dec. 7, 2011) (not designated for publication). Specifically, the court of appeals noted that Anne stated in the videotape that appellant touched her genitals under her clothing, but testified at trial that appellant touched her over her clothing. On this basis, the court of appeals concluded that the "erroneous admission of Anne's video interview had a substantial influence on the outcome of the proceeding." *Id.; see also* Tex.R.App. P. 44.2(b). The issue of harm was not raised by the State in its petition, and we do not review the court of appeals's harm analysis in this opinion. Likewise, appellant does not present a challenge under the Confrontation Clause. We note, however, that because both

the interviewer, Drennan, and the interviewee, Anne, testified at trial and were subject to cross-examination, the defendant was afforded his rights under the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

7. The State's sole ground for review asks, "Does Article 38.72 [sic] of the Texas Code of Criminal Procedure 'clearly contemplate' that an outcry statement will be offered only though an outcry witness, or may a videotape of the child's outcry to that witness be played if both the witness and child are available for cross-examination?"

ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add to or subtract from such a statute. *Boykin*, 818 S.W.2d at 785.

█ If, on the other hand, the meaning of a statute is ambiguous, we may consider limited extra-textual factors to discern the meaning that best honors the will of the Legislature. *Cornet v. State*, 359 S.W.3d 217, 221 (Tex.Crim.App.2012). Ambiguity exists when a statute may be understood by reasonably well-informed persons to have two or more different meanings. *See Boykin*, 818 S.W.2d at 785–86; *State v. Neesley*, 239 S.W.3d 780, 783 (Tex.Crim. App.2007). In construing ambiguous statutes, relevant factors that we may consider include legislative history, laws on the same or similar subjects, and consequences of a particular construction. *See* TEX. GOV'T CODE § 311.023; *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex.Crim.App. 2012) (in construing statutes, court may look to other provisions within entire statutory scheme rather than merely single, discrete provision at issue).

### B. Analysis of Article 38.072 Statutory Language

The outcry statute creates a hearsay exception for a child-complainant's out-of-court "statements" that "describe the alleged offense," so long as those statements were made "to the first [adult] person . . . to whom the child . . . made a statement about the offense." *See* TEX.CODE CRIM. PROC. art. 38.072, § 2(a)(1)–(3). Subsection (b) establishes additional procedural requirements, including that the party intending to offer the statement provide the adverse party with a "written summary of the statement" and the "name of the witness through whom it intends to offer the statement." *See id.* at § 2(b).

With respect to the question of what forms of evidence are admissible under the statute, the phrase "witness through whom it intends to offer the statement" could reasonably be interpreted as indicating that the child's outcry statement must be conveyed directly "through" the testimony of the outcry "witness." *See id.;* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1360 (10th ed., 1996) (defining "witness" as "one who testifies in a cause or before a judicial tribunal"); *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex.Crim.App.2011) (court may presume that words not defined in statute are used in their "ordinary and common sense"). Under this interpretation, the outcry statute would permit the "first person" to whom the child made a "statement about the offense" to testify regarding the content of those statements. *See* TEX.CODE CRIM. PROC. art. 38.072, § 2(a). The statute would not, however, permit the child's statements to be conveyed through other mediums, such as video or audio recordings, because such "statements" would not be properly offered "through" a "witness." *See id.* at § 2(a)–(b).

In support of this interpretation, we note that, although it has never precisely addressed the present question, this Court has repeatedly described the form of outcry evidence admissible under the statute as testimony from a witness. *See, e.g., Sanchez v. State*, 354 S.W.3d 476, 479 n. 1 (Tex.Crim.App.2011) ("An outcry witness may testify . . . about the victim's out-of-court description of the offense."); *Lopez v. State*, 343 S.W.3d 137, 140, 144 (Tex. Crim.App.2011) (describing outcry statute as permitting "hearsay testimony" from an "outcry witness"); *Martinez v. State*, 178 S.W.3d 806, 811 (Tex.Crim.App.2005) (outcry "witness may recite the child's out-of-court statements concerning the offense"); *Rodriguez v. State*, 819 S.W.2d 871, 872 (Tex.Crim.App.1991) (describing outcry statute as permitting "testimony" from

"outcry witness"); *Shelby v. State*, 819 S.W.2d 544, 550–51 (Tex.Crim.App.1991) (noting that outcry witness "permitted to relate to the jury the statements made by the complainant on the date of the offense"); *Long v. State*, 800 S.W.2d 545, 547 (Tex.Crim.App.1990) (outcry witness would "testify as to what the child [complainant] told her"); *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App.1990) (outcry statute "demands that only the 'first person' [in whom child confides] is allowed to testify").

Furthermore, the Texas intermediate courts of appeals that have examined this precise question have uniformly determined that the outcry statute limits the form of evidence to testimony from a witness. *See, e.g., Dunn*, 125 S.W.3d at 614 (holding that video testimony not properly admitted under outcry statute because the statute "clearly contemplates that a person, subject to confrontation and cross-examination, will testify about what was said"); *Divine v. State*, 122 S.W.3d 414, 418 (Tex.App.–Texarkana 2003, pet. ref'd) (noting that court has "repeatedly emphasized that a videotape is not a person; therefore, Article 38.072 cannot apply to it"); *Scott v. State*, 222 S.W.3d 820, 831 (Tex.App.–Houston [14th Dist.] 2007, no pet.) (noting that "Article 38.072 does not apply to admission of a child's videotaped interview because it applies to the testimony of a live outcry witness").

The statute, however, is subject to an alternative interpretation. Although the statute clearly contemplates that the child's statements will be offered "through" an outcry "witness," the State argues that this language does not necessarily compel the conclusion that the witness must relate the child's statements through testimony. *See* Tex.Code Crim. Proc. art. 38.072, § 2(b)(1)(B). Rather, under this latter interpretation, any form of evidence, including a video recording of the child's out-of-court statement, would be admissible, so long as the proper outcry witness was present at trial and could act as a sponsoring witness for that recording. *See id.* at § 2(a)–(b).

The statute, while strongly suggesting that the child's statements will be conveyed through the testimony of the outcry witness, does not expressly exclude forms of evidence other than witness testimony. *See id.* Because the statute may be understood by reasonably well-informed persons to have two meanings, we conclude that the statute is ambiguous. *See Boykin*, 818 S.W.2d at 785–86; *Neesley*, 239 S.W.3d at 783. We proceed to consider the appropriate extra-textual factors. *See Shipp v. State*, 331 S.W.3d 433, 439 (Tex. Crim.App.2011); *Mahaffey v. State*, 316 S.W.3d 633 at 637 (Tex.Crim.App.); Tex. Gov't Code § 311.023.

**C. Extra-textual Analysis**

As explained in more detail below, an analysis of the extra-textual factors supports the conclusion that the videotaped interview of the child does not fall within the statutory hearsay exception for outcry evidence.

**1. Legislative History**

■ The legislative history surrounding the enactment of the outcry statute clearly indicates that lawmakers intended to create a hearsay exception for live, in-court testimony by an outcry witness. When originally enacted in 1985, the statute's supporters noted that the legislation was necessary because adults in whom child sex-abuse victims had confided were "barred from repeating what they have been told because it is considered hearsay." *See* Act of May 27, 1985, 69th Leg., R.S., Ch. 590, § 1, effective Sept. 1, 1985; House Study Group, Bill Analysis, Tex.

H.B. 579, 69th Leg., R.S. (May 9, 1985).[8] The outcry statute aimed to alleviate this problem by allowing "the first person the child told of the offense to testify about what the child said." HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985).[9] Never mentioning any type of evidence other than live testimony by a witness, the legislative-committee report makes multiple references to the outcry witness's ability to "testify as to the child's statements." Id.[10]

This legislative history of the outcry statute reflects lawmakers' understanding that the first adult in whom a child confides about sexual abuse will usually be a close relative, a trusted teacher, a school counselor, or a neighbor.[11] See id. (noting

---

8. The outcry statute has its historical origins in the law of evidence relating to rape and statutory rape prosecutions. In a rape prosecution, a conviction would not be sustained on the uncorroborated testimony of a complainant who failed to make a prompt outcry. See White v. State, 478 S.W.2d 506, 508 (Tex. Crim.App.1972) (testimony of prosecuting witness in rape case "need not be corroborated except in instances of a belated outcry"). Outcry evidence, therefore, was historically admissible at trial, but (1) only for the limited purpose of proving that an outcry had occurred, and (2) the content of the outcry was inadmissible. See, e.g., Holland v. State, 802 S.W.2d 696, 699 n. 4 (Tex.Crim.App.1991) (explaining that "outcry or recent complaint evidence is not considered hearsay" because only "bare fact" of outcry, not "content of outcry," admissible); Sledge v. State, 686 S.W.2d 127, 130 (Tex.Crim.App.1984) (noting that "State was entitled to show only the fact of 'outcry,' but not the details or underlying circumstances"). The outcry statute modifies this common-law rule by permitting the fact finder to consider the outcry as substantive evidence, but only if certain procedural and content requirements are met. See TEX.CODE CRIM PROC. art. 38.072, § 2(a) (creating hearsay exception for "statements" of child-complainant that "describe the alleged offense" and are made to "first person" child told about offense); Martinez, 178 S.W.3d at 811 (noting that hearsay exception for outcry "carefully limited" and applicable only when "specified conditions" are met).

9. In 2009, when the Legislature amended the outcry statute to increase the statutory maximum age of a qualifying child-victim from 12 to 14, the Legislature reaffirmed the purpose of the outcry statute, noting that "an outcry witness may be allowed by the judge to give testimony regarding statements from the victim concerning the alleged offense." See HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, H.B. 2846, 81st Leg., R.S. (May 8, 2009). Lawmakers additionally noted that only outcry "testimony" describing "the alleged offense" would be admissible at trial, while statements describing extraneous offenses would be inadmissible. See SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 2846, 81st Leg., R.S. (May 19, 2009).

10. We may presume that legislators, in enacting the outcry statute, were aware of our case law dealing with the issue of outcry evidence. See Scott v. State, 55 S.W.3d 593, 596 (Tex. Crim.App.2001) (we may "presume the Legislature was aware" of relevant case law in drafting provisions). For more than fifty years, this Court has described "outcry" evidence as consisting of testimony by a witness who describes the complainant's first revelations of abuse. See, e.g., Richardson v. State, 458 S.W.2d 665, 666 (Tex.Crim.App.1970) (rejecting appellant's hearsay complaint that "witness testified that [complainant] came to his house immediately after" the assault and reported the rape; testimony relating complainant's "outcry was clearly an exception to the hearsay rule"); Torbert v. State, 166 Tex. Crim. 311, 313 S.W.2d 303, 307 (1958) (upholding admissibility of complainant's parents' "testimony . . . as to the outcry made to them"); Hale v. State, 164 Tex.Crim. 482, 300 S.W.2d 75, 76 (1957) (trial court did not err in permitting father to "recount the outcry made by the child" morning after sexual assault). This historical background strongly suggests that lawmakers would have understood that they were creating a means of admitting the live testimony of the first adult in whom the complainant confided, and not a videotaped statement from the complainant herself.

11. The legislative history indicates that lawmakers intended to narrowly limit the scope of the outcry statute to statements made to a

that outcry statute was intended to except from hearsay rule testimony of "people whom these children trust and in whom they have confided"); *see also Martinez,* 178 S.W.3d at 811 (stating that outcry statute serves society's interest in "protecting children in court by allowing the admission of their casual 'street corner' confidences to an adult"); *Ex parte Thompson,* 153 S.W.3d 416, 422 (Tex.Crim. App.2005) (Cochran, J., concurring) (noting that, in aggravated sexual assault of a child prosecutions, there is typically an "outcry witness, normally the mother or other female relative, who testifies that the child told her about the abuse"). In light of the belief that a trusted adult would usually be the outcry witness, it is reasonable to assume that this witness would have neither the opportunity nor the desire to videotape a child's outcry statement as that child reveals for the first time the intimate details of an abusive sexual encounter. Because it envisioned that the child's outcry would take the form of a spontaneous verbal communication to a trusted adult, it is reasonable to conclude

that the Legislature did not intend to permit admission of a child's videotaped statements, which suggest a lesser degree of spontaneity (and, perhaps, reliability). We conclude that the legislative report's sole reference to testimony rather than to other forms of evidence, and the unlikelihood that a person trusted by the child would videotape her outcry together compel a conclusion that the Legislature did not intend for admission of videotapes under the outcry statute.

### 2. More Specific Law on Same Subject

The admissibility of a child-victim's pretrial recorded statements is more specifically governed by a related statute set forth at Texas Code of Criminal Procedure Article 38.071, which we refer to as the "video statute."[12] *See* Tex.Code Crim. Proc. art. 38.071; Tex. Gov't Code § 311.026; *Cheney v. State,* 755 S.W.2d 123, 126 (Tex.Crim.App.1988) (statutes on same or similar subjects may be construed jointly; in case of conflict, specific statute applies over general statute addressing

---

trusted confidant of the child. *See* Tex.Code Crim. Proc. art. 38.072, § 2(a)(3) (permitting only first outcry witness to testify). Prior to enacting the "first person" rule, lawmakers rejected a proposal that would have instead permitted the testimony of trained child advocates. *See* House Study Group, Bill Analysis, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985) (bill's opponents stated that "this exception to the hearsay rule should not be so limited," and that "it would make more sense to allow those specifically trained in child-abuse cases to testify as well about what the victim had previously said to them about the alleged offense"). Instead the Legislature adopted the current provision making admissible only the "testimony" of the "first person a child cries out to." *Id.*

12. Pursuant to the Texas Family Code, an interview conducted by TDFPS must be audio- or video-recorded if conducted during an active investigation. *See* Tex. Fam.Code

§ 261.302(e). Admissibility of such recorded interviews at trial is governed by the video statute, which specifically applies to pretrial videotaped statements from a victim. *See* Tex. Code Crim. Proc. art. 38.071. Under the video statute, among additional requirements, a recording of a victim statement is admissible only when the child is unavailable to testify and the trial court finds either (1) that the factual issues were "fully and fairly" inquired into in a "detached manner" by a neutral individual experienced in child-abuse cases who "seeks to find the truth of the matter," or (2) that "the statement was not made in response to questioning calculated to lead the child to make a particular statement," that the person conducting the interview is an expert in handling child abuse cases and subject to cross-examination at trial, that law enforcement and attorneys were not present, and that the child was placed under oath prior to making the statement. *See id.* at §§ 1, 2, 5.

same subject). The video statute creates a hearsay exception for a child's video- or audio-recorded pre-trial statements, but only if stringent requirements are met, including that the child is unavailable to testify at trial and that the interviewer is a neutral person experienced in child-abuse cases or a child-abuse expert. *See* TEX. CODE CRIM. PROC. art. 38.071, §§ 1, 2, 5 (providing for admission of "recording of an oral statement of the child" only if certain requirements are met); *Matz v. State*, 14 S.W.3d 746, 746 (Tex.Crim.App. 2000) (noting that video statute "provides that under certain circumstances, a recording of an oral statement of a child sexual assault victim is admissible"); *Torres v. State*, 33 S.W.3d 252, 256 (Tex.Crim.App. 2000) (describing video statute as governing "special out-of-court circumstances ... regarding the recording of statements by children"); *Smith v. State*, 88 S.W.3d 643, 647 (Tex.App.–Tyler 2000) (stating that video statute "provides a detailed procedure by which a videotaped interview of a child may be admitted into evidence"), *vacated on other grounds by* 61 S.W.3d 409 (Tex.Crim.App.2001).[13]

The legislative history surrounding the video statute reveals that legislators intended that it provide the vehicle driving the admission of videotaped, pretrial statements by child-victims. HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.B. 836, 68th Leg., R.S. (May 24, 1983) (noting that the video statute "would permit the pretrial videotaped testimony of children aged 12 and under to be used as evidence in sexual-abuse cases"). Understanding that "videotaped recordings of a child's testimony are now considered hearsay evidence and they are not admitted in court," lawmakers enacted the video statute so that "pretrial videotapes would be admissible only if they met several listed requirements." *Id.; see also* HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 836, 68th Leg., R.S. (May 19, 1983) (noting that video statute "provides for the circumstances under which children who are victims of sexual offenses may visually and aurally record testimony which is admissible in Court"). Lawmakers, thus, viewed the video statute, enacted two years prior to the outcry statute, as the vehicle through which a child's pretrial recorded statements could be offered as substantive evidence at trial.

An irreconcilable conflict would exist if both statutes were interpreted to permit the admission of a child's videotaped statements because the outcry statute would create a loophole for admitting evidence that does not meet the requirements of the more stringent video statute. For example, the video statute allows for admission of a child's videotaped statement only when the child is unavailable to testify, but, on the other hand, the outcry statute applies only when the victim is available to

---

**13.** This Court recently held certain provisions of the video statute unconstitutional on Confrontation Clause grounds. *See Coronado v. State*, 351 S.W.3d 315, 317, 329–31 (Tex. Crim.App.2011) (holding that article 38.071, § 2, provision allowing for use of videotaped *ex parte* interrogatories submitted by defendant and posed by "neutral" forensic interviewer was not "constitutional substitute for live cross-examination and confrontation" of victim). In *Coronado*, we reasoned that the video statute provision allowing for *ex parte* interrogatories violated the Confrontation Clause because there was no "rigorous adversarial testing" of the victim's statements by the "greatest legal engine for uncovering the truth: contemporaneous cross examination." *See id.* at 331; U.S. CONST., amend. VI. We further noted that courts have routinely held that videotaped victim interviews are testimonial and thus inadmissible pursuant to the Confrontation Clause unless the child testifies at trial or the defendant had a prior opportunity for cross-examination. *Coronado*, 351 S.W.3d at 325.

testify. *Compare* TEX.CODE CRIM. PROC. art. 38.071, § 1 (trial court must "determine[ ] that a child younger than 13 years of age would be unavailable to testify in the presence of the defendant"), *with id.* at art. 38.072, § 2(b)(3) (outcry statute hearsay exception applies only if child is younger than 14 years old and child "testifies or is available to testify" at trial).[14] Furthermore, the video statute contains stringent requirements aimed at ensuring the interviewer's neutrality and professionalism, but, on the other hand, the outcry statute merely requires that the statements be reliable and does not require that the outcry witness be neutral. *Compare* TEX.CODE CRIM. PROC. art. 38.071, §§ 2, 5 (under video statute, person taking child's recorded statement must be "neutral individual experienced in child abuse cases that seeks to find the truth of the matter" or an "expert in the handling, treatment, and investigation of child abuse cases" whose interview tactics did not consist of calculated questioning designed to elicit particular response), *with id.* at art. 38.072, § 2(b)(2) (under outcry statute, child's statement need only be "reliable based on the time, content, and circumstances of the statement"), *and Sanchez,*

354 S.W.3d at 488 (outcry testimony admissible even if outcry witness biased).

■ Construing the statutes jointly, we conclude that the admissibility of a child's videotaped statement is governed by the more specific video statute, as opposed to the more general outcry statute. *Cheney,* 755 S.W.2d at 126; TEX.CODE CRIM. PROC. arts. 38.071, 38.072. To permit admission of a complainant's videotaped statement under the more lenient outcry statute would undermine the video statute's rigid unavailability requirement and its requirements aimed at guaranteeing the expertise and neutrality of the interviewer. *See Cheney,* 755 S.W.2d at 126 ("If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision."). Here, the requirements of the video statute were not met because the child was available to testify at trial.[15] *See* TEX.CODE CRIM. PROC. art. 38.071, § 1. We decline to adopt an interpretation of the outcry statute that thwarts the Legislature's clearly stated intent to make a child's videotaped statement admissible as substantive evidence only under strictly limited circumstances. *See id.* at §§ 1–5.[16]

14. The legislative-committee report supporting passage of the outcry statute indicates that legislators were mindful of preserving "the defendant's right to confront the witness," and, for this reason, lawmakers included the requirement that the complainant "be available to testify in court." *See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985). For similar reasons, lawmakers stipulated that a child's videotaped statements would be inadmissible at trial unless the child-complainant had been declared unavailable to testify. *See* HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 66, 70th Leg., 2nd C.S. (July 17, 1987) (amending video statute to provide additional protections under the Confrontation Clause, including that finding of unavailability be "individualized").

15. *See, e.g., Edwards v. State,* 107 S.W.3d 107, 110–11 (Tex.App.–Texarkana 2003, pet. ref'd) (holding trial court abused its discretion by "admitt[ing]" the videotaped interview with the child without any evidence to reflect the child was unavailable to testify," in violation of video statute); *Morales v. State,* 222 S.W.3d 134, 142 (Tex.App.–Corpus Christi 2006, no pet.) ("child-complainant must be unavailable to testify before a videotape of the child's testimony is admissible" under video statute).

16. Relying on this same rationale, we have previously held that we would not allow one hearsay exception to be used as a "back door" for admitting evidence expressly excepted from another hearsay exception, thereby indicating legislative intent to maintain the normal operation of the hearsay rule with

### 3. Consequences of Any Possible Constructions of Statute

The State argues that the videotape should be admissible under the outcry statute because a video-recorded interview is "a far more accurate representation of a child's statement than a person's memory of the child's statement." But the outcry statute does not provide for admission of the most accurate, or the most detailed, statement from the child. Rather, the Legislature has created a narrow hearsay exception that applies only when the child's statements describe the alleged offense and were made to the first adult outcry witness. *See* TEX.CODE CRIM. PROC. art. 38.072, § 2(a)(1)–(3). Additionally, the hearsay exception for outcry is applicable only if the statute's stringent procedural requirements are met. *See id.* at. § 2(b); *Long*, 800 S.W.2d at 547 (holding that outcry witness "testimony is only admissible as a statutory exception to the hearsay rule if its procedures are followed"). The statute's explicit content and procedural requirements are mandatory, even though they may at times result in admission of a less detailed statement from the child.[17]

Furthermore, although the legislative history of both the video and outcry statutes indicates lawmakers' concern about the reliability of a child's out-of-court statements, the Legislature was also focused on excluding unfairly prejudicial evidence, particularly videotaped victim statements, and preserving a defendant's right of confrontation. *See* HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 66, 70th Leg., 2nd C.S. (July 17, 1987) (indicating legislative intent to tighten restrictions on use of videotaped testimony to avoid potential Confrontation Clause violations and noting that videotape procedure had been, in some cases, abused "to achieve maximum effect on the jury"). By carefully examining the various con-

---

respect to that evidence. *See Cole v. State,* 839 S.W.2d 798, 811 (Tex.Crim.App.1992) (op. on reh'g) (law enforcement investigative reports do not fall within hearsay exception for business records).

17. Presiding Judge Keller suggests that we should analyze the outcry statute in the same way that we analyze other hearsay exceptions, such as excited utterances, where we determine whether the evidence supports that exception, but then permit that evidence to be introduced through any form, such as testimony or a recording of a 911 call. *See Gardner v. State,* 306 S.W.3d 274, 288–92 (Tex. Crim.App.2009). This comparison, however, is inapplicable here for two reasons. First, to constitute as an excited utterance, a statement must relate to a startling event or condition and have been made while the declarant was under the stress of excitement caused by the event or condition. *See* TEX.R. EVID. 803(2); *Zuliani v. State,* 97 S.W.3d 589, 595–96 (Tex.Crim.App.2003). Nothing in the excited utterance hearsay exception limits the form of the evidence in any way. In contrast, the outcry statute clearly contemplates the role of an outcry "witness" through whom the child's statement will be offered, and is thus not wholly silent with respect to how the outcry evidence will be presented at trial. *See* TEX.CODE CRIM. PROC. art. 38.072, § 2. Second, as explained in more detail above, the legislative history of the outcry and video statutes reveals that the Legislature intended to require that videotaped victim statements meet certain requirements aimed at guaranteeing the neutrality of the interviewer and unavailability of the child, whereas the outcry statute was intended to be limited to statements made to the first outcry witness. Because videotapes may be admissible generally for other hearsay exceptions, this does not mean that a statute governing a very specific type of hearsay may not exclude videotapes and instead require that the proper outcry witness actually testify. *See* TEX.R. EVID. 101(c) (Code of Criminal Procedure provisions take precedence over Texas Rules of Evidence; inconsistencies to be removed "by reasonable construction"). We are unpersuaded by the argument that because videotapes are generally admissible under the rules of evidence they must, therefore, be permitted here.

cerns inherent in the admission of hearsay evidence, it is reasonable to conclude that the Legislature narrowly permitted the introduction of outcry statements through witness testimony, but excluded video-taped statements that did not meet the more particularized admission requirements intended to guarantee the neutrality of the interviewer and to protect a defendant's rights under the Confrontation Clause. Contrary to the State's suggestion, the reliability of the child's statement was not lawmakers' sole concern when they enacted the outcry statute. *See Garcia*, 792 S.W.2d at 91 (in creating outcry statute, "[L]egislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children").

## III. Conclusion

Based on our analysis of the statutory language in conjunction with an examination of the applicable extra-textual factors, we conclude that outcry statute does not permit admission of video-recorded statements of a complainant. We, therefore, affirm the court of appeals's judgment reversing appellant's conviction for indecency with a child by contact.

KELLER, P.J., filed a dissenting opinion, in which KEASLER and HERVEY, JJ., joined.

HERVEY, J., filed a dissenting opinion, in which KELLER, P.J., and KEASLER, J., joined.

KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

The issue in this case is no different from whether a recording of a 911 call may be played to a jury when the contents of the call are otherwise admissible. Statements made during a 911 call are hearsay, but they may be admissible under one or more hearsay exceptions, such as dying declaration, excited utterance, or present sense impression.[1] We have upheld the admission of the testimony of a 911 operator regarding such statements,[2] and if that testimony is admissible, the recording of the call itself is admissible.[3] This practice has occurred in the courts of Texas and in other states.[4]

By saying, "A statement that meets the requirements of Subsection (a) is not inadmissible because of the hearsay rule," Article 38.072 simply creates a hearsay exception, on par with other types of exceptions such as excited utterances.[5] Although Article 38.072 contemplates that there is a sponsoring witness for an outcry statement, the statute does not specify how the sponsoring witness is to offer the outcry statement. The witness could testify to the contents of the statement, or the witness could sponsor an electronic recording

1. *See Gardner v. State*, 306 S.W.3d 274, 288–92 (Tex.Crim.App.2009) (State argued that statements made in a 911 call were admissible under all three theories. We addressed only whether the particular 911 call in question qualified as a dying declaration, and we held that it did.).

2. *See id.*

3. *See id.* It is not clear whether the 911 tape was itself admitted, though it appears possible that it was. *See id.* at 307 n. 6. The Court

made no distinction between the tape and testimony about the tape. *See also Dixon v. State*, 358 S.W.3d 250, 254 (Tex.App.–Houston [1st Dist.] 2011)(holding recording of 911 call admissible over hearsay objection).

4. *See Davis v. Washington*, 547 U.S. 813, 818–19, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *Estrada v. State*, 313 S.W.3d 274, 300 (Tex. Crim.App.2010); *Dixon, supra.*

5. Tex.Code Crim. Proc. art. 38.072, § 2(b).

of the statement. An outcry witness could even sponsor a written recording, if the child's outcry were made in writing.[6]

The Court contends that the outcry statute differs from other hearsay exceptions because the statute "clearly contemplates the role of an outcry 'witness' ... and is not wholly silent with respect to how the outcry evidence will be presented at trial."[7] I must respectfully disagree. Nowhere does the statute refer to "testimony" from an outcry witness. Instead, the statute refers to a "statement" by the child and it refers to a witness through whom a party intends to offer "the statement."[8] The Court contends that this language supports the notion that the child's outcry statement will be conveyed "through" the testifying outcry witness because a witness is someone who testifies in court, but as Judge Hervey explains in her dissent, this language is broad enough to encompass submitting materials through a witness. A witness can, for example, take the stand to lay the predicate for a business record, a videotape, or a defendant's written confession.

I can see why a defendant would not want the jury to see and hear exactly what his victim said when she made her outcry, but it makes no sense to say that a *less* reliable method of relating that outcry (oral testimony) is admissible while a *more* reliable recitation of the outcry (video recording) is not. With these comments, I join Judge Hervey's dissenting opinion.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

I disagree with the disposition of this case. It is clear that a video recording of an outcry statement is admissible pursuant to Article 38.072 of the Texas Code of Criminal Procedure, provided that the other statutory requirements are met. In reaching the opposite conclusion, the majority interprets the legislative intent too narrowly and relies on a non-controlling statute.

We granted the State's petition for discretionary review to determine whether the court of appeals erroneously decided that, under Article 38.072 of the Texas Code of Criminal Procedure, a child's outcry statement may be offered only through an outcry witness, not in the form of a video recording of the child's outcry to that witness, which is played at trial where both the witness and the child are available for cross-examination.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). Whether hearsay is admissible at a criminal trial is determined by the Texas Rules of Evidence and the Sixth Amendment of the U.S. Constitution. *Sanchez v. State,* 354 S.W.3d 476, 484 (Tex.Crim.App.2011). Although the rules of confrontation and the rules of hearsay generally protect similar values, the overlap between the two is not complete.[1] *United States v. Owens,*

---

**6.** If a child reveals that she has been sexually assaulted by writing a letter to a relative, I see no justification for excluding the letter from evidence as long as the child is available to testify.

**7.** Court's op. at n.17.

**8.** *See* Tex.Code Crim. Proc. art. 38.072, § 2(a), 2(a)(1)(B), 2(b), 2(b)(1)(B).

**1.** Appellant did not raise the issue of confrontation to the court of appeals, and he does not argue such here. Moreover, the Supreme Court has held that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *see also Delaware v. Fensterer,* 474

484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Generally, hearsay is inadmissible, but it may be admitted if so provided by the Rules of Evidence, or if it is allowed "by other rules prescribed pursuant to statutory authority." Tex.R. Evid. 802. One such statute is Article 38.072 of the Texas Code of Criminal Procedure, which provides for the admission of the outcry statement of a child victim of sexual or physical abuse under specified circumstances. Tex. Code Crim. Proc. art 38.072;[2] *Sanchez,* 354 S.W.3d at 484. Article 38.072 applies only to statements that describe the alleged offense, were made by the child against whom the charged offense was allegedly committed, and were made to the first person, 18 years or older, to whom the child or person with a disability made a statement about that offense. Tex.Code Crim. Proc. art. 38.072, § 2(a). A statement that meets these requirements overcomes the hearsay rule and is admissible if the following conditions are also satisfied:

(1) [O]n or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;

(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and

(C) provides the adverse party with a written summary of the statement;

U.S. 15, 21–22, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam); *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

**2.** The statute has been amended by three acts of the Legislature since proceedings began against Appellant. *See* Act of June 11, 2009,

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child or person with a disability testifies or is available to testify at the proceeding in court or in any other manner provided by law.

*Id.* § 2(b).

When interpreting statutory language, we focus on the " 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). To determine the collective intent of the Legislature, we look first to the literal text to discern its "fair, objective meaning." *Id.* As we have explained,

We do this because the text of the statute is the law in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature. We focus on the literal text also because the text is the only definitive evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law. There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment. Yet a third reason for focusing on the literal text is that the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted.

81st Leg., R.S., ch. 284, § 1; Act of June 19, 2009, 81st Leg., R.S., ch. 710, § 1; Act of April 21, 2011, 82nd Leg., R.S. Ch.1 § 2.07. None of those changes affected the statute's application to this case, so I will refer to the current version of the statute.

*Id.* We must "presume that every word in a statute has been used for a purpose and that each word, phrase, and sentence should be given effect if reasonably possible." *State v. Hardy,* 963 S.W.2d 516, 520 (Tex.Crim.App.1997). Only if the statutory language is ambiguous or leads to absurd results may we consult extra-textual sources. *Boykin,* 818 S.W.2d at 785.

The majority concludes that Article 38.072 creates a hearsay exception for outcry evidence only when that evidence is conveyed by the live testimony of the outcry witness, not through the admission of video-recorded statements of the complainant. However, the plain language of the statute is clearly and unambiguously broad enough to permit the admission of an outcry statement in the form of a video recording.

The portion of Article 38.072 that refers to the offer of an outcry statement states only that the party intending to offer the statement must "provide[ ] the adverse party with the name of the witness through whom it intends to offer the statement." TEX.CODE CRIM. PROC. art. 38.072, § 2(b)(1)(B). This language indicates that the outcry statement must be offered "through" a witness, that is, by means or agency of the witness. *See* AMERICAN HERITAGE COLLEGE DICTIONARY 1413 (3d ed.2000) (defining "through"); WEBSTER'S II NEW COLLEGE DICTIONARY 1150 (1999) (same). But the language of the statute is silent regarding, and does not limit, the particular form that the outcry statement must take.

I recognize that the outcry witness often testifies directly as to the substance of the outcry statement. This is because a recording of the outcry statement does not exist and the outcry witness's recount is

the only evidence available of such. But the mere fact that this is the more-common scenario does not mean that the admission of other evidentiary forms of the outcry statement are prohibited. The Legislature could have restricted the form in which the outcry statement is presented to the jury, but it elected not to. When it enacted Article 38.071 in 1983 (two years before it enacted Article 38.072), the Legislature specifically provided that the form of evidence admissible under that statute was "the recording of an audio statement of the child." In contrast, when it enacted Article 38.072, the Legislature placed no such restriction on the form in which outcry statements are presented to the jury.

In its discussion of legislative intent, the majority places much emphasis on the reference in the legislative committee report to testimony rather than to other forms of evidence. But by focusing on the particular word "testify," the majority downplays the broader reach of the Legislature's general intent. Because the hearsay rule barred adults in whom child sex-abuse victims had confided from repeating what they had been told, the Legislature's stated purpose was to provide an exception to the hearsay rule to allow **statements** of child victims to come into evidence. *See* HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (1985); HOUSE STUDY GROUP, BILL ANALYSIS, Texas H.B. 579, 69th Leg., R.S. (May 9, 1985). Recognizing that it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them,[3] the Legislature constructed Article 38.072 to allow the child's outcry statement to come in "through" the first adult in whom a child confides regarding the abuse.

---

**3.** *Martinez v. State,* 178 S.W.3d 806, 810–11 (Tex.Crim.App.2005); *see also Coronado v. State,* 351 S.W.3d 315, 317 (Tex.Crim.App. 2011); *Gonzales v. State,* 818 S.W.2d 756, 759–60 (Tex.Crim.App.1991).

The language of the statute reflects that the first adult in whom a child confides is to serve as a conduit for the admission of the outcry statement (as reflected by the language "through whom"), without specifying whether the outcry statement is to be conveyed through the outcry witness's live testimony, a recording of the outcry statement, or a combination of the two. The majority contends that because the Legislature "envisioned that the child's outcry would take the form of a spontaneous verbal communication to a trusted adult," it "did not intend to permit admission of a child's videotaped statement." But even if there were a focus on spontaneity, the Legislature drafted the statute with language broad enough to encompass a situation in which the child's statement is recorded, even if less spontaneous.[4]

The majority concludes "that the admissibility of a child's videotaped statement is governed by the more specific video statute [Article 38.071], as opposed to the more general outcry statute [Article 38.072]." But Article 38.071 cannot control a case such as this when the victim was available and testified. Article 38.071 applies to situations in which the child witness is *unavailable*, whereas Article 38.072, the statute at issue in this case, requires that the child witness testify or at least be *available* to testify.[5] A statute cannot control the disposition of a case when the facts are not within its scope. Moreover, I want to emphasize that the ground upon which we granted specifically addresses only Article 38.072.[6]

In conclusion, "[w]here the statute is clear and unambiguous the Legislature must be understood to mean what it has expressed, and it is not for the courts to add [to] or subtract from such a statute." *Coit v. State,* 808 S.W.2d 473, 475 (Tex. Crim.App.1991) (quoting *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Crim.App.1967)). Because Article 38.072 does not limit the form in which the outcry statement may be presented through the outcry witness to the jury, the plain language is clearly broad enough to permit the admission of an outcry statement in the form of a video

4. The legislators were mindful of preserving the defendant's rights to confront the witness, and accordingly, they alleviated this concern by requiring that the complainant "be available to testify." *See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985).

5. The majority asserts that "[a]n irreconcilable conflict would exist if both statutes were interpreted to permit the admission of a child's videotaped statements because the outcry statute would create a loophole for admitting evidence that is otherwise inadmissible under the more stringent video statute." This argument fails because the requirements of the two statutes are tailored to different circumstances, that is, whether the child complainant is available or unavailable. The requirements of Article 38.072 that the child victim be available and his statement be admitted "through" the outcry witness minimize the need for the more stringent requirements of Article 38.071. For example, Article

38.071 requires that the person taking the child's statement must be "neutral individual experienced in child abuse cases that seeks to find the truth of the matter" or an "expert in the handling, treatment, and investigation of child abuse cases" whose interview tactics did not consist of calculated questioning designed to elicit particular responses. This requirement is unnecessary under Article 38.072 because the outcry statute allows the defense to directly question and assess the witness's neutrality and professionalism and, if necessary, call the child victim to the stand to compare his recollection of the outcry to that of the outcry witness.

6. The State's specific ground for review states the following: Does Article 38.072 of the Texas Code of Criminal Procedure "clearly contemplate" that an outcry statement will be offered only through an outcry witness, or may a videotape of the child's outcry to that witness be played if both the witness and child are available for cross-examination?

recording, provided that the statute's other requirements are also satisfied. Accordingly, I believe that the admission of the video recording of Anne's outcry statement during Drennan's testimony was proper under Article 38.072.

For these reasons, I respectfully dissent.