

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00135-CR

———————————————

RANDY DWAYNE WOOD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1716649

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant Randy Dwayne Wood appeals his convictions for aggravated sexual assault and indecency with a child. Wood raises two issues, asserting that the trial court reversibly erred by (1) admitting improper lay opinion testimony from the complainant and (2) improperly allowing a detective to testify as an "outcry" witness. Because the trial court did not abuse its discretion by admitting the complainant's testimony and because Wood's second issue was not preserved for our review, we will overrule both of his issues and affirm the trial court's judgments.[1]

## I. Proceedings in the Trial Court[2]

When the complainant, H.S.,[3] was 12 years old, her mother met Wood. When H.S. was 13 years old, Wood moved in with H.S.'s mother, H.S. and her half-brothers. According to H.S., she viewed Wood as "[a] parent and a friend." But in 2021, when H.S. was 18, she went to the Keller Police Department and reported to a detective,

---

[1]Although Wood was charged, convicted, and sentenced under one cause number, the trial court entered a separate judgment for each count.

[2]Wood does not challenge the sufficiency of the evidence to support his convictions. Thus, we limit our summary of the background facts to what is pertinent to his appellate issues.

[3]To protect her privacy, we refer to the complainant by her initials only. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); Tex. R. App. P. 9.10(a)(3).

Bethany Grimm, that Wood had been sexually abusing her.[4] Wood was later charged with two counts of aggravated sexual assault of a child and one count of indecency with a child by contact.

At trial, text messages between H.S. and Wood were admitted into evidence. Although Wood did not object to the admission of the text messages, he later objected when the State elicited testimony from H.S. about what Wood had meant by some of the messages that he had texted her. Wood argued that such testimony would be "speculation" on H.S.'s part. The trial court overruled his objection and granted him "a running objection to what [Wood] was thinking."

After H.S. testified, Detective Grimm testified about what H.S. had told her when she made her initial report to the Keller P.D. The jury convicted Wood on all counts and assessed his punishment at 16 years in prison and a $5,000 fine on each count.

## II. Appeal

### A. Wood's First Issue: H.S.'s Lay Opinion Testimony

#### 1. Standard of Review

We review a trial court's ruling to admit or exclude evidence for an abuse of discretion and will not reverse that ruling absent a clear abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024); *Bautista v. State*, 189 S.W.3d 365,

---

[4]According to Detective Grimm, H.S. "believed that she was . . . around the ages of 14 to 15" when the abuse occurred.

368 (Tex. App.—Fort Worth 2006, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and we will uphold it. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

## 2. Analysis

In his first issue, Wood argues that the trial court's allowing H.S. to testify over his objection as to what Wood had meant by some of the text messages he had sent her violated Texas Rule of Evidence 701 "because it was speculation on the part of the witness." Testimony based solely on speculation lacks probative value and thus is not relevant or admissible. *See* Tex. R. Evid. 401, 402; *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd). But a witness may testify in the form of an opinion if the opinion testimony is (a) rationally based on the witness's perception and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue. *See* Tex. R. Evid. 701. "Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations." *Wade v. State*, 663 S.W.3d 175, 187 (Tex. Crim. App. 2022); *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). This also incorporates the personal knowledge requirement of Texas Rule of Evidence 602, which states that a witness who is not giving expert testimony may not testify to a

matter unless he or she has personal knowledge of the matter. Tex. R. Evid. 602; *Osbourn*, 92 S.W.3d at 535.

While "[i]t is impossible for a witness to possess personal knowledge of what someone else is thinking[,] . . . a witness . . . may possess personal knowledge of facts from which an opinion regarding [someone else's] mental state may be drawn." *Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997). "The jury is then free to give as much or as little weight to the opinion as it sees fit." *Id.* If there is evidence in the record supporting the trial court's decision to admit or exclude an opinion under Rule 701, then there is no abuse of discretion, and the appellate court must defer to that decision. *Id.* at 901.

Here, after the text messages were admitted into evidence, the State read the texts aloud to the jury by engaging in a colloquy with H.S. in which the prosecutor read Wood's messages to H.S. and H.S. read her messages to Wood. Wood first objected to "speculation" when the prosecutor read a text in which Wood had mentioned "giving it to" H.S. and H.S. testified that, by "it," Wood was referring to sex. The prosecutor then asked H.S. what Wood had meant in several other messages he had sent her, and she provided context for each one.

For example, the prosecutor asked H.S. what Wood's text that "You know what you[']r[e] doing and use that one thing as an excuse," meant, to which H.S. replied that Wood was again referring to "[s]ex." After reading several more text messages, the State reached an exchange where Wood had texted her, "God that

5

f[******] hurt . . . you had to tell him to be outside so you can hurt me more. . . . I loved the f[***] out of you. And in return I get torn apart. . . . I'm sorry [I'm] hurt and can't handle this at the moment[.] . . . You [h]ave no idea the pain I'm in." To put that text in context, H.S. testified that her boyfriend had come to pick her up and that it had hurt Wood that she was in a relationship with another person. When asked what Wood had meant when he said, "in return I get torn apart," H.S. related that he was referring to his heartbreak and that "he d[id]n't know how to get over it."

The prosecutor then asked H.S. about a text in which Wood had said, "If y[o]u only would talk to me and respect how I felt we wouldn't have a problem. I love you and [I']m trying [m]y best to get over you and move on. I'll stay away." H.S. explained that Wood had "wished that [they] could work things out and eventually be in a relationship together, but it didn't work out that way."

H.S. also addressed some lengthier text messages from Wood in which he accused H.S. of "always hurting" him and "slapping [him] in the face with constant[ ] heart[]break"; told her that he loved her but that she did not love him; cursed at her; admonished her not to speak to him ever again; claimed that he was "deleting everything about" her and blocking her number; and said, "What you did tonight was the worst thing you can do to someone." Consistent with her previous testimony, H.S. explained that Wood was referring to her relationship with her boyfriend and "[b]asically just saying that he want[ed] to give up on" her.

6

Critical to our analysis is the nature of H.S.'s relationship with Wood. By the point in the trial at which H.S. testified about their text messages, she had already testified in graphic detail about her history with Wood, including how he first came into her life, what their relationship had been like in its early years, and how he had sexually abused her over several years when she was a teenager. Her testimony demonstrated a familiarity with Wood and personal knowledge of facts that informed her interpretation of what he had said in his text messages to her.

Our opinion in *Turro* illustrates why this testimony made H.S.'s opinion testimony about the texts admissible. 950 S.W.2d 390. In *Turro*, a murder case, a witness had overheard a conversation between the decedent—the witness's sister—and the defendant a few days before the murder. *Id.* at 397. At trial, she testified to her perception of the conversation and her interpretation of a statement the defendant had made to the decedent. *Id.* Because the witness possessed considerable background information about the decedent and the defendant's relationship, we held that the witness had based her testimony on her personal knowledge and that the trial court's ruling fell within the zone of reasonable disagreement. *Id.* at 401–03. In other words, because the witness demonstrated a basis for her interpretation of the exchange that she had overheard—her personal familiarity with the speakers, their history, and their difficulties—we held that the witness's opinions were helpful to the jury's understanding of her testimony and material to its subsequent determination of the defendant's guilt. *Id.*

As with the witness in *Turro*, H.S.'s testimony regarding her history with Wood established her familiarity with him. Such personal knowledge allowed her testimony explaining the meaning of his texts to provide context that was helpful to the jury's understanding of the evidence. Using the same rationale of *Turro*, we hold that it was within the trial court's discretion to determine that H.S.'s testimony about what Wood had meant in his text messages to her was not speculation but was (1) rationally based on her perception and (2) helpful to clearly understanding her testimony and to determining Wood's guilt. *See* Tex. R. Evid. 701. The trial court therefore did not abuse its discretion by admitting the testimony over Wood's "speculation" objection. *See Turro*, 950 S.W.2d at 403; *Pete v. State*, No. 09-16-00370-CR, 2018 WL 4608230, at *3–4 (Tex. App.—Beaumont Sept. 26, 2018, pet. ref'd) (mem. op., not designated for publication); *Austin v. State*, 794 S.W.2d 408, 409–10 (Tex. App.—Austin 1990, pet. ref'd) (concluding that a police officer's opinion testimony that "Swedish Deep Muscle Rub" was "a catch phrase for prostitution" was admissible as lay opinion testimony under Rule 701). We overrule Wood's first issue.

## B. Wood's Second Issue: Not Preserved

In his second issue, Wood argues that the trial court "erred in allowing Detective Grimm to testify to [H.S.'s] alleged outcry statement" in violation of the applicable version of Texas Code of Criminal Procedure Article 38.072. *See* Tex.

Code Crim. Proc. art. 38.072[5]; *see also Bays v. State*, 396 S.W.3d 580, 581 & n.1 (Tex. Crim. App. 2013) (referring to Article 38.072 as "the outcry statute" and explaining that it "creates a hearsay exception for a child's first outcry of sexual abuse to an adult."). But Wood wholly failed to preserve this issue for our review.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Most complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

Wood did not raise his Article 38.072 complaint in the trial court. He did not object when Detective Grimm testified to what H.S. had told her at the police station, nor did he file a pretrial motion to suppress her outcry testimony. In fact, the record shows that, during a hearing held outside the jury's presence before Detective Grimm testified, Wood was aware that Detective Grimm would testify as an outcry witness, he was aware of the nature of her testimony, and he voiced no objection. Because

---

[5]Both Wood and the State acknowledge that Article 38.072 has been amended since Wood's trial. *See* Act of May 16, 2025, 89th Leg., R.S., ch. 250, H.B. 1778, § 4.02. Although the parties differ on which version of the statute should apply here, the amendments do not affect our analysis because Wood did not preserve this issue for appeal.

Wood did not preserve this issue for our review, we overrule it. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1).

### III. Conclusion

Having overruled both of Wood's appellate issues, we affirm the trial court's judgments.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 4, 2026