IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0354-12






THE STATE OF TEXAS



v.



CARL ALAN BENNETT, Appellee





ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY





 Keller, P.J., filed a concurring opinion in which Price, J., joined as to
part I.


 I agree with the Court that, because the law was unsettled, counsel was not ineffective for
failing to raise a limitation claim. I write separately to explain why the applicable period of
limitation for the aggravated assault charged in this case was two years.

I. LIMITATIONS


A. The Statutes


 The difficulty in determining the statute of limitations in this case results from the fact that
each of the two possibly applicable limitation statutes (Article 12.01 and Article 12.03) excepts from
its scope any offenses controlled by the other statute. Article 12.01 says , "Except as provided in
Article 12.03, felony indictments may be presented within these limits, and not afterward." (1) It then
provides a list of felony offenses and their applicable limitation periods. (2) Aggravated assault appears
nowhere on the list, (3) but the list contains a catch-all provision that says "three years from the date
of the commission of the offense: all other felonies." (4) Unless excepted under Article 12.03, then,
aggravated assault would clearly fall within the catch-all provision and have a limitation period of
three years.

 Article 12.03 says, "Except as otherwise provided by this chapter, any offense that bears the
title 'aggravated' shall carry the same limitation period as the primary crime." (5) The primary crime
for aggravated assault is assault. (6) Although assault can sometimes be a felony, (7) the underlying
assault in this case is a Class A misdemeanor. (8) Under Article 12.02, the limitation period for a
Class A misdemeanor is two years. (9) If aggravated assault has the same limitation period as the
underlying assault, then the limitation period is two years, unless some other provision in Chapter
12 creates an exception.

 To summarize, if the "catch-all" provision in Article 12.01 controls, then the limitation
period is three years, but if the "same for aggravated as for primary crime" provision in Article 12.03
controls, then the limitation period is two years. Which provision controls depends in part upon how
each of the "except" clauses operates. Although resolving this issue appears at first to be a
complicated matter, it really is not. As I shall show below, both the legislative history of Article
12.03(d) and simple logic lead to the conclusion that the limitation period in this case is two years.

B. The Cases - Dicta Goes Both Ways


 In the 1979 case of Hunter v. State, the defendant claimed that the indictment was defective
because it alleged in the disjunctive that he intentionally or knowingly committed the offense rather
than alleging it in the conjunctive. (10) In what was clearly an aside, the Court said that the use of the
disjunctive word "or" was far less misleading than an "on or about" allegation, but that "on or about"
allegations were routinely upheld. (11) During that off-topic discussion, the Court mentioned that the
statute of limitations for the offense of aggravated assault was "a period of three years." (12) The Court
gave no citation for that proposition. (13) This discussion, which was clearly dictum and unsupported
by any authority, has no precedential value. 

 Eight years later, in Salas v. State, the issue before the Court was whether there was any
evidence that the defendant's first prior felony conviction became final before the commission of the
offense in the second prior felony conviction, so as to satisfy the habitual-offender allegation in the
indictment. (14) The first prior conviction was final on January 15, 1971. (15) The defendant was indicted
on May 6, 1975, for the aggravated assault that resulted in his second felony conviction. (16) The Court
used a three-year limitation period to determine that the earliest possible date the second crime could
have been committed was May 6, 1972, making the defendant subject to the habitual-offender
provision. (17) In connection with the limitations discussion, the Court simply said, "The statute of
limitations for aggravated assault has long been three years." (18) In support of this proposition, the
Court cited the catch-all provision in Article 12.01, Article 12.03(d), the assault statute (Penal Code
§ 22.01), and former Penal Code Article 1147, the aggravated assault statute that existed before
1974. (19) 

 The discussion of limitation periods in Salas is problematic on a number of levels. It did not
matter whether the limitation period for aggravated assault was two or three years: a limitation period
of two years would also have satisfied the habitual-offender allegations. (20) But more to the point,
although the Salas court cited the relevant statutes, it did not explain how they gave rise to its
conclusion that the limitation period was three years. (21) So, the discussion in Salas was also dictum
and has no precedential value.

 Next came Ex parte Matthews, in which the issue was whether the statute of limitations was
tolled by the defendant's absence from the State. (22) The defendant had previously testified as an out-of-state witness in a capital murder trial on June 12, 1981, and she left the state after she testified. (23) 
Around February or March of 1990, the State discovered facts that led to the defendant being
indicted on January 8, 1991, for aggravated perjury. (24) The State sought to rely upon a tolling
provision that provided that "[t]he time during which a person is accused of an offense and is absent
from the State shall not be computed in the period of limitation." (25) This Court held that the tolling
provision operated only when the State had some sort of formal accusation pending, so the limitation
period was not tolled. (26) 

 During this discussion, the Court stated that the period of limitations for aggravated perjury
was two years because an offense titled "aggravated" carries the same limitation as the primary crime
under Article 12.03(d). (27) The Court did not discuss the catch-all provision in Article 12.01 or the
pronouncements made in Hunter and Salas in connection with the offense of aggravated assault. (28) 
In any event, the conclusion that the limitation period was two years was not necessary to the Court's
holding. Because the State did not discover the perjury for more than eight years, it mattered not
whether the limitation period was two years or three years. Thus, the discussion of the applicable
limitation period in Matthews was also dictum and has no precedential value. 

 Because all of our prior caselaw is dicta, we are essentially operating on a clean slate. 

C. Before 1997


 We must construe a statute in accordance with the plain meaning of its language unless the
language is ambiguous or the plain meaning would lead to absurd results that the legislature could
not have possibly intended. (29) In conducting this inquiry, we presume that the legislature intended
the entire statutory scheme to be effective. (30) Most of the relevant statutory scheme was in place
before 1997, but the "[e]xcept as otherwise provided" clause found in Article 12.03(d) was the result
of a 1997 amendment. (31) It is useful to set aside, for the moment, the 1997 amendment and assess
the meaning of the statutory language that was in place prior to 1997. I will then look at whether the
1997 amendment changes anything.

 As noted above, article 12.01 begins by saying that it prescribes the time limits "[e]xcept as
provided in Article 12.03." This language suggests that the provisions of Article 12.03 trump any
provisions found in Article 12.01. The point at which the provisions of Article 12.01 and 12.03
appear to be in conflict is with respect to Article 12.01's three-year catch-all provision. The import
of this language, then, is that the catch-all provision applies to unlisted felonies unless the felony is
covered by the provisions of Article 12.03. Because aggravated assault is an "aggravated" offense,
the plain language of the statute, at least prior to 1997, seems to dictate that Article 12.03(d) applies
rather than the three-year catch-all provision.

 It might be argued that the "[e]xcept as provided in Article 12.03" phrase means that the
provisions of Article 12.03 could lengthen the limitation period beyond the period in the catch-all
provision but not shorten it. That is, Article 12.03 could, arguably, be construed as permitting
periods of limitation of longer than three years but not shorter, so that the catch-all provision would
provide a minimum limitation period of three years for felonies. (32) That would be consistent with the
fact that the catch-all provision currently prescribes the shortest limitation period in Article 12.01. 
This may be what the Salas court assumed when it cited both to the catch-all provision and to article
12.03(d).

 But even if the language of Article 12.01 could conceivably be read that way, it is not the
most natural reading. And such a reading is inconsistent with the apparently absolute language (at
least before 1997) of Article 12.03. Article 12.03(d) simply said that an aggravated offense carries
the same limitation period as the primary crime; it did not (and does not) say that it carries at least
the same limitation period.

 Moreover, reading the "except as provided in Article 12.03" phrase to only lengthen
limitation periods makes sense only if the three-year catch-all provision is thought to set a minimum
limitation period of three years for felonies. But when Chapter 12 was reshaped in 1973 in what is
now the current limitations framework, Article 12.01 included in its list of limitation periods for
specific offenses a one-year limitation period for felony sex offenses. (33) Though that provision was
removed two years later, (34) its presence negates the idea that the legislature thought it was setting a
minimum three-year limitation period for felonies.

 Finally, the idea that Article 12.03 could only lengthen the period of limitation runs aground
when one considers what offenses were actually covered by Article 12.03(d). The reshaping of
Chapter 12 and the enactment of the 1974 Penal Code occurred at the same time in the same
legislation. (35) When that occurs, we generally assume that lawmakers are aware of how the various
provisions will work together. (36) In enacting the 1974 Penal Code, the legislature created at least five,
and possibly six, pairs of primary and aggravated offenses: (1) kidnapping and aggravated
kidnapping, (37) (2) rape and aggravated rape, (38) (3) assault and aggravated assault, (39) (4) robbery and
aggravated robbery, (40) (5) perjury and aggravated perjury, (41) and (possibly) (6) promotion of
prostitution and aggravated promotion of prostitution. (42)

 If Article 12.03(d) were designed only to lengthen limitation periods beyond that prescribed
by the catch-all provision, then one would expect such an effect to be the norm with respect to the
aggravated offenses that the legislature had enacted. But of the six aggravated offenses identified,
only one is an example in which 12.03(d) lengthens the limitation period: aggravated robbery. 
Robbery was (and still is) subject to a five-year limitation period, (43) but aggravated robbery was not
(and still is not) found in the list of offenses contained in Article 12.01. So Article 12.03(d) ensured
that aggravated robbery would carry the five-year limitation period that attaches to robbery instead
of the three-year limitation period found in the catch-all provision.

 But at the time the scheme was first enacted, none of the other aggravated offenses could be
affected that way. Kidnapping and aggravated kidnapping were both felonies (44) that were not
included in the list when Article 12.01 was revamped in 1973, (45) and thus, they were both subject to
the three-year catch-all provision. Rape and aggravated rape were explicitly made subject to a one-year limitation period. (46) When this one-year limitation period was removed in 1975, the legislature
did not replace it with anything, effectively relegating both of those felony offenses, (47) as in the case
of the kidnapping offenses, to the three-year catch-all provision. 

 The remaining three aggravated offenses--aggravated assault, aggravated perjury, and
aggravated promotion of prostitution--all straddled the misdemeanor-felony divide with their lesser
counterparts. When first enacted in 1973, assault was just a misdemeanor. (48) Aggravated assault was
a third-degree felony at the time. (49) Perjury was a Class A misdemeanor while aggravated perjury
was a third-degree felony, (50) and the same was true, respectively, for promotion of prostitution and
aggravated promotion of prostitution. (51) 

 If we construe the statutory limitation scheme to assign aggravated versions of these offenses
the two-year limitation period that attaches to their misdemeanor counterparts, then Article 12.03(d)
operates with meaningful effect with respect to at least half of the five or six aggravated offenses at
issue (i.e. meaningful effect given in the context of aggravated robbery, aggravated assault,
aggravated perjury, and (possibly) aggravated promotion of prostitution). By contrast, if we construe
the statutory limitation scheme to assign the aggravated versions of these offenses the three-year
limitation period found in the catch-all provision, then we relegate the meaningful effect of 12.03(d)
to only one aggravated offense out of the five or six at issue (i.e. meaningful effect given only in the
context of aggravated robbery). Given the relatively large proportion of aggravated offenses that
straddled the misdemeanor-felony divide with their lesser counterparts, the latter construction makes
little sense.

 D. After 1997


 In 1997, with HB 921, the legislature added aggravated sexual assault of a child to the listed
offenses found in Article 12.01, as follows: 

(5) ten years from the 18th birthday of the victim of the offense:

* * *


 (C) aggravated sexual assault under Section 22.021(a)(1)(B), Penal Code; (52)

With the same bill, the legislature added to Article 12.03(d) the phrase "Except as otherwise
provided by this chapter." (53) The bill analysis for HB 921 explains the purpose of this change as
follows, "Amends Article 12.03(d), Code of Criminal Procedure, by making a conforming change." (54) 
The conforming change was necessary because limitations for sexual assault was, at the time, five
years. (55) Absent the "except" phrase, the new, explicit ten-year limitation period in Article
12.01(5)(C) would conflict with Article 12.03(d)'s old "same for aggravated as for primary crime"
provision. The express purpose of adding the "except" phrase to Article 12.03(d) was to give effect
to the explicit ten-years-from-eighteenth-birthday limitation period for aggravated sexual assault of
a child in Article 12.01. 

 Since then, the Legislature has added a second aggravated offense to the listed offenses in
Article 12.01: aggravated kidnapping with the intent to violate or abuse the victim sexually. The
current version of Article 12.01 therefore explicitly lists the limitation status of two "aggravated"
offenses. (56) Because the status of these two "aggravated" offenses are explicitly listed in Article
12.01, they are excepted from the operation of Article 12.03(d). 

 But aggravated assault is not explicitly listed in Article 12.01. The only way aggravated
assault could fall within the exception to Article 12.03(d) and by that means escape the "same for
aggravated as for primary crime" provision is if it were included in the catch-all provision for
unlisted felonies. That is, the "same for aggravated as for primary crime" provision would apply
unless the three-year catch-all phrase, by virtue of being another provision in the chapter, trumps it. 
But, as explained above, the legislature's express purpose in adding the "except" clause to Article
12.03(d) was to resolve the conflict between the new ten-year-from-18th-birthday limitation
provisions that had been added to Article 12.01 in the same bill and the old "same for aggravated as
for primary crime" limitation provision. Article 12.03(d)'s "except" clause was designed specifically
to apply to listed offenses. 

 It is, further, plainly illogical to conclude that the exception applies to the offenses that fall
within the three-year catch-all provision. Construing the three-year catch-all provision to supersede 
Article 12.03(d)'s "same for aggravated as for primary crime" provision would eviscerate the latter
provision entirely because it would make any aggravated offense--whether listed or not listed--an
exception to its dictates. Not a single aggravated offense would be subject to the "same for
aggravated as for primary crime" provision. Not a one. Article 12.03(d) would have zero
application. 

 And if the three-year catch-all provision trumps the "same for aggravated as for primary
crime" provision, the limitation period for aggravated robbery would be three years even though
limitations for plain robbery is five years. It seems unlikely (to say the least) that the legislature
would have intended the limitation period for robbery to be longer than that for aggravated robbery. 
If anything, the exception added to Article 12.03(d) reinforces the notion that the legislature intended
for aggravated assault to have the same limitation period as assault because, while the legislature has
explicitly set out exceptions involving aggravated sexual assault and aggravated kidnapping, it has
not done so for aggravated assault.

 The conclusion demanded by both legislative history and logic is that Article 12.03(d)
controls, and the limitation period for the aggravated-assault offense in this case was two years. (57)

E. Judge Johnson and Judge Cochran's Concurrences


 Judge Johnson's concurrence contends that it would be an absurd result to construe the
limitation period for aggravated assault as being the same as for a misdemeanor, i.e. two years. 
While Judge Johnson is correct that sexual assault and kidnapping currently have limitation terms
that exceed the three-year catch-all provision, that was not true when Article 12.03(d) was enacted. 
As explained above, when 12.03(d) was enacted in 1974, all sex offenses had a limitation period of
one year (which is less than the two-year period for misdemeanors), and the offense of kidnapping
was not even listed in Article 12.01, which meant that both kidnapping and aggravated kidnapping
fell within the three-year catch-all provision, with or without Article 12.03(d). (58) 

 I agree with Judge Johnson that we can look at surrounding statutory provisions in assessing
whether the plain language of a statutory provision under consideration is absurd. But in conducting
that inquiry--in determining whether the legislature could not have possibly intended what the
statutory language seems to say--we should look to the surrounding provisions that were in effect
or were enacted at the time the legislature enacted the statute under consideration, not at provisions
that were passed years or even decades later. (59) The biggest difficulty with Judge Johnson's
concurrence, as I see it, is that it attempts to ascertain the legislature's intent in 1974 by looking at
statutes that were passed long after that time, while failing to consider the statutory framework that
was actually in place in 1974.

 Judge Johnson's concurrence next contends that the legislature surely could not have
intended to impose the same limitation period for a violent offense such as aggravated assault as for
a misdemeanor assault that merely involves an offensive or provocative touching. But some
misdemeanor assaults--causing bodily injury and threatening imminent bodily injury--do qualify
as violent offenses. (60)

 Moreover, Judge Johnson's concurring opinion does not take into account the fact that
aggravated assault was a misdemeanor before 1974. (61) When the legislature passed Article 12.03(d)
in 1974 it also made aggravated assault a third degree felony, (62) the lowest possible felony at the time,
just one level above a Class A misdemeanor. (63) Times have changed: aggravated assault is now a first
or second degree felony (64) and there is now a class of felonies below third degree. (65) But the absurd-results inquiry turns on what the legislature could have possibly intended in 1974, when the statute
was enacted, not what it could have intended if it had enacted the statute today. We should keep in
mind that the 1974 legislature is the same legislature that placed a one-year limitation period on all
sexual offenses--something that would be unthinkable today. 

 Further, Judge Johnson's expression of incredulity just amounts to saying that it seems
unlikely that the legislature intended a two-year limitation period for aggravated assault. If one looks
at the statute from the perspective of the 1974 legislature, intending a two-year limitation period does
not seem at all unlikely, but even if it did, that is not the same as saying that the legislature could not
have possibly intended it.

 Judge Cochran contends that several pre-1974 offenses were precursors to the modern
aggravated-assault offense, and that, included among these precursor offenses were felony offenses
that proscribed "assault with intent" to commit some other offense, such as murder, rape, robbery,
and burglary. (66) In my view, these "assault with intent" offenses were not precursors to the modern
aggravated-assault offense but were instead precursors to the modern attempt offenses. (67) Before
1974, there was no general attempt statute. (68) Attempt offenses were codified on an ad hoc basis. 
There was an "attempt" offense for burglary, (69) but no attempt offense existed for murder or
robbery. (70) An "attempt" offense existed for rape, but only to the extent it was not already covered
by the offense of assault with intent to commit rape. (71) The promulgation of "assault with intent"
offenses was one of the ways in which the legislature proscribed uncompleted versions of major
crimes. These offenses were grouped together in their own chapter of the Penal Code, separate from
the chapter in which aggravated assault was proscribed. (72)

 Judge Cochran's concurrence observes that changing the name of the offense of "aggravated
assault" to "felony assault" would make clear that the offense is not governed by Article 12.03 and
has a different limitation period than the unaggravated version of assault. But Judge Cochran's
discussion shows an example of the legislature doing precisely the opposite. As Judge Cochran
observes, the pre-1974 offense of assault with intent to commit rape was construed by this Court to
have a longer limitation period than the offense of rape, despite the fact that assault with intent to
commit rape was essentially an uncompleted rape. The 1974 Penal Code changed that by essentially
merging what was the offense of assault with intent to commit rape into the offense of attempted
rape. The result was that the limitation period for both offenses became the same, which at the time
was one year.

 As Judge Cochran points out, the legislature could have exempted the offense of aggravated
assault from Article 12.03 by giving it a different name. Or it could have assigned aggravated assault
an express limitation period in Article 12.01, just as it has done for other offenses. The legislature
has done neither of these things. As it is, the language of the current statutory scheme affords no
logical basis for excluding aggravated assault from the "same for aggravated as for primary crime"
mandate of Article 12.03(d), and doing so renders that statute meaningless. 

II. CONCLUSION


 Although I conclude that the limitations period for the aggravated assault offense in this case
was two years, I agree with the Court that the law was unsettled. Consequently, I join the Court's
opinion.

Filed: November 27, 2013

Publish
1. Tex. Code Crim. Proc. art. 12.01.
2. Id.
3. Id., passim.
4. Id. art. 12.01(7).
5. Id. art. 12.03(d).
6. See Tex. Penal Code § 22.02(a) ("A person commits an offense if the person commits
assault as defined in § 22.01 and . . . .")
7. See id. § 22.01(b), (b-1).
8. See id. § 22.01(a)(1), (b).
9. Tex. Code Crim. Proc. art. 12.02(a).
10. 576 S.W.2d 395, 396 (Tex. Crim. App. 1979).
11. Id.
12. Id. at 399.
13. Id.
14. 724 S.W.2d 67, 67 (Tex. Crim. App. 1987).
15. Id. at 68.
16. Id.
17. Id.
18. Id.
19. Id.
20. Nor did the Court need to count back three years. The indictment specified an offense date
of April 27, 1975
, see id., and aggravated assault was not a felony until January 1, 1974, with the
advent of the modern Penal Code. See Tex. Penal Code, art. 1148 (Vernon's Supp. 1950)
(maximum punishment of two years in jail); Tex. Penal Code, art. 47 (Vernon's 1948) ("An offense
which may--not must--be punishable by death or by confinement in the penitentiary is a felony;
every other offense is a misdemeanor.").
21. Salas, passim. 
22. 933 S.W.2d 134, 135 (Tex. Crim. App. 1996), overruled on other grounds by Proctor
v. State, 967 S.W.2d 840 (Tex. Crim. App. 1998).
23. Id.
24. Id.
25. Id. at 137.
26. Id. at 138.
27. Id. at 136.
28. Id., passim.
29. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
30. Bays v. State, 396 S.W.3d 580, 584 (Tex. Crim. App. 2013).
31. See Acts 1997, 75th Leg., ch. 740, § 2.
32. Judge Cochran's concurrence does in fact assume that the intent of the Legislature in
enacting Article 12.01(7) was that "all felonies have, at a minimum, a three-year statute of
limitations[.]"
33. See Tex. Code Crim. Proc. Ann. art. 12.01, historical note (Vernon's 1977) (referring
to 1975 amendment).
34. See id. (text and historical note).
35. See Acts 1973, 63rd Leg., ch. 399, § 1 (penal code), § 2(B) (Chapter 12), eff. January 1,
1974.
36. Tapps v. State, 294 S.W.3d 175, 179 (Tex. Crim. App. 2009).
37. Tex. Penal Code Ann. §§ 20.03, 20.04 (Vernon's 1974).
38. Id. §§ 21.02, 21.03.
39. Id. §§ 22.01, 22.02.
40. Id. §§ 29.02, 29.03.
41. Id. §§ 37.02, 37.03.
42. Id. §§ 43.03, 43.04. Though titled "aggravated" in conformity with the requirements
of Article 12.03(d), the aggravated promotion of prostitution does not explicitly incorporate the
crime of promotion of prostitution by its Penal Code section. I express no opinion on whether
this offense pair falls within the ambit of Article 12.03(d).
43. See Tex. Code Crim. Proc. art. 12.01(3)(A) (Vernon's 1977). See also Tex.Code Crim.
Proc. art. 12.01(4)(A) (current).
44. See Tex. Penal Code §§ 20.03(c), 20.04(b) (Vernon's 1974).
45. See Tex.Code Crim. Proc. art. 12.01, passim (Vernon's 1977).
46. See id., historical note (referring to deleted subd. (4), which had read: "one year from the
date of the commission of the offense: any felony in Penal Code Chapter 21 (Sexual Offenses)").
47. See Tex Penal Code §§ 21.02(c), 21.03(b) (Vernon's 1974). 
48. Id. § 22.01(b).
49. Id. § 22.02(c).
50. Id. §§ 37.02(b), 37.03(b). 
51. Id. §§ 43.03(b), 43.04(b).
52. Acts 1997, 75th Leg., ch. 740, § 1.
53. Id., § 2.
54. Bill Analysis, House Comm. on Criminal Jurisprudence, H.B. 921, § 2 (April 9, 1997), 
See also Bill Analysis, Senate Research Center, H.B. 921, § 2 (May 17, 1997).
55. Tex. Code Crim. Proc. art. 12.01(4)(C) (West 1996, 1998).
56. See Tex. Code Crim. Proc. art. 12.01(1)(B) (no limitation), (5)(B) (20 years from the
18th birthday of a victim younger than 17 years). 
57. This does not mean that the limitation period for aggravated assault will always be two
years. If the underlying assault is a felony, that offense would fall within the three-year catch-all
provision, and 12.03(d) would confer the same limitation period to an aggravated assault based on
that underlying felony.
58. See this opinion at notes 33, 44-46, and accompanying text.
59. See Volosen v. State, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007) ("in interpreting a prior
law, we generally accord little weight to subsequent legislative enactments").
60. See Tex. Penal Code § 22.01(a)(1), (2).
61. See this opinion at note 20 and accompanying text.
62. See this opinion at note 49 and accompanying text.
63. See Tex Penal Code §§ 12.03(a), 12.04(a) (Vernon's 1974).
64. See Tex Penal Code § 22.02(b) (current).
65. See Id. § 12.04(a).
66. See Tex. Penal Code, , arts. 1160-1164 (1948).
67. The offenses of maiming, disfiguring, and castration describe conduct that would fall
within the modern aggravated assault offense, but those offenses are worded very differently
from the modern aggravated assault offense. See id., arts. 1166-1168. By contrast, the pre-1974
offense titled aggravated assault contains provisions that are similar to the modern offense with
that name. See Tex. Penal Code, , art. 1147(6), (7) (Supp. 1972).
68. See Tex. Penal Code, passim (1948). 
69. Id., art. 1402. 
70. See id., Title 15, Ch. 16, arts. 1256-1258 and Title 17, Ch. 7, arts. 1408-1409.
71. Id., art. 1190 ("but not such as to bring it within the definition of assault with intent to
commit rape").
72. See id., Title 15, Ch. 2 (titled "Aggravated Assault and other offenses") and Title 15,
Ch. 4 (titled "Assault with intent to commit some other offenses").