**Opinion issued May 1, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00948-CR**

———————————

**ROBERTO RENE LOPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1618603**

---

## MEMORANDUM OPINION

A jury convicted appellant Roberto Rene Lopez of the second-degree felony

offense of indecency with a child by contact and assessed his punishment at ten

years' confinement.[1] In three issues on appeal, Lopez argues that (1) the State failed to present sufficient evidence that he engaged in sexual contact with the minor complainant; (2) the trial court erred by allowing evidence that Lopez had engaged in sexual contact with another child; and (3) the trial court erred by allowing a former paralegal with the Harris County District Attorney's Office to testify as a second outcry witness.

We affirm.

## Background

In September 2017, thirteen-year-old E.L.G. ("Eva")[2] accompanied her older cousin Anaih Contreras while Anaih dropped off a job application before heading to the house of her mother, Oralia Lopez. Oralia and Eva's mother are sisters, and Oralia had taken care of Eva nearly every day after school when Eva was young. Oralia described the family as close-knit, and she believed that Eva felt comfortable with her and "would just tell [Oralia] how she felt."

While in the car on the way to Oralia's house, Eva disclosed to Anaih that her father, Lopez, had been sexually abusing her. Eva was "heartbroken" and sobbed

---

[1]    *See* TEX. PENAL CODE § 21.11(a)(1), (c)(1).

[2]    In this opinion, we use pseudonyms for the complainant and her half-brother to protect their privacy.

nearly the entire way to the house. Eva did not disclose details about the abuse to Anaih.

At Oralia's house, Eva was "very upset and crying," and she "proceeded to tell [Oralia] that her dad had been touching her inappropriately in her private areas." Eva explained that Lopez touched her breasts and genitals over her clothes, and he had been doing so since she was three years old. Eva was shaking during the conversation, and she told Oralia that she feared returning to Lopez's house. Oralia testified that Eva's disclosure did not surprise her because Oralia and Eva spent a lot of time together when Eva was young, and when Lopez would pick her up from Oralia's house, Eva would hold onto her "for dear life," crying and screaming that she did not want to go with Lopez.

Anaih and Oralia told Eva's mother about Eva's disclosure, and Eva's mother called the police that day. Shortly after, Eva's mother took her to Texas Children's Hospital, where Eva spoke with Tuesday Sowers, a Sexual Assault Nurse Examiner, and had a medical exam. Eva told Sowers that Lopez had been "sexually harassing" her, which she clarified meant that he was "touching [her] inappropriately." Eva further stated that Lopez liked to "grab [her] boobs or [her] butt," and he touched her over her clothes. The trial court admitted into evidence a copy of Eva's medical records, which contained the history that Sowers obtained from Eva.

Eva also underwent a forensic interview with Justine Smith at the Harris County Children's Assessment Center. Eva disclosed sexual abuse by Lopez during this interview, again stating that Lopez had touched her over her clothes. Smith believed that Eva did not tell her everything that had happened, and she characterized Eva as being in the "partial disclosure" stage of disclosure during the interview. Although defense counsel cross-examined Smith with specific statements Eva made during the interview—including a statement referring to Lopez possibly owing money to Eva's mother—a recording of the forensic interview was not offered or admitted into evidence.

Approximately one year after her initial outcry, Eva met with a prosecutor, a child advocate, and Nicole Rojas, a former paralegal with the Harris County District Attorney's Office, to discuss the case.[3] During this meeting, Eva repeated the allegations that she had made to Oralia, Sowers, and Smith, but she also disclosed additional details and instances of abuse. Eva disclosed that rather than just touching her over her clothes, Lopez also attempted to penetrate her, touched her anus and vagina under her clothes, and forced her to watch a pornographic video of a woman performing oral sex on a man and then perform that act on him.

---

[3] At the time of Lopez's trial, Rojas worked as a paralegal for the Fort Bend County District Attorney's Office.

Eva was nineteen years old when she testified at Lopez's trial. She testified to acts consistent with her initial disclosures to Oralia, Sowers, and Smith, and she also testified to acts consistent with her disclosure to Rojas. Eva testified that she was three years old the first time that Lopez touched her inappropriately, and he did so frequently until she was thirteen.

Following a hearing under Code of Criminal Procedure article 38.37, section 2(b), Eva's older half-brother V.L. ("Vincent") also testified. *See* TEX. CODE CRIM. PROC. art. 38.37, § 2(b) (providing that in prosecutions for certain sexual offenses against children, trial court may admit evidence that defendant committed "separate offense" against another child "for any bearing the evidence has on relevant matters"). Vincent testified that Lopez began touching him inappropriately when he was three or four years old, and he described multiple instances of sexual abuse.

The trial court instructed the jury on both the charged offense of continuous sexual abuse of a young child and the lesser-included offense of indecency with a child by contact. The jury found Lopez guilty of the lesser-included offense. Following a punishment hearing, the jury assessed Lopez's punishment at ten years' confinement. This appeal followed.

## Sufficiency of the Evidence

In his first issue, Lopez argues that the State failed to present sufficient evidence to support the conviction. Specifically, Lopez argues that the evidence was

5

insufficient to show (1) that he engaged in sexual contact with Eva and (2) that he did so with the intent to arouse or gratify his sexual desire. He acknowledges Eva's testimony regarding sexual contact, but he argues that this testimony was "overwhelmingly outweigh[ed]" by contradictory evidence, including evidence that Eva said Lopez was "sexually harassing" her rather than sexually assaulting her, evidence that Eva's mother coached her, and a lack of evidence that Lopez touched Eva with the intent to receive sexual gratification rather than simply engaging in "rough play" with her.

## A.      Standard of Review

When assessing whether sufficient evidence supports a conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences from the evidence, a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this standard, the factfinder has "full responsibility" to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* We consider "the cumulative force of all evidence" in determining whether the evidence was sufficient to establish each element of the offense. *Id.*; *Hacker v. State*, 389

S.W.3d 860, 873 (Tex. Crim. App. 2013) (stating that appellate courts may not use "a 'divide and conquer' strategy for evaluating sufficiency of the evidence").

The factfinder is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023) (quotations omitted). We may not "sit as the thirteenth juror" and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Edwards v. State*, 666 S.W.3d 571, 574 (Tex. Crim. App. 2023). When the record supports conflicting inferences from the evidence, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Dunham*, 666 S.W.3d at 482 (quotations omitted). The jury may draw reasonable inferences from evidence presented at trial, and jurors may "use common sense, common knowledge, personal experience, and observations from life when drawing inferences." *Edwards*, 666 S.W.3d at 574. The jury may not, however, "come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

Direct evidence and circumstantial evidence are equally probative. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022). Circumstantial evidence alone may be sufficient to uphold a conviction. *Id.* "The evidence need not negate every conceivable alternative to a defendant's guilt to be sufficient." *Id.*

**B.     Analysis**

In the jury charge, the trial court instructed the jury on both the charged offense of continuous sexual abuse of a young child and the lesser-included offense of indecency with a child by contact. The jury found Lopez guilty of the lesser-included offense.

A person commits the offense of indecency with a child by contact if, with a child younger than 17 years of age, the person "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE § 21.11(a)(1). Penal Code section 21.11(c)(1) defines "sexual contact" to include "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" if the act is "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1). Under the lesser-included offense instruction in the jury charge, the State was required to prove that Lopez "intentionally or knowingly engage[d] in sexual contact with [Eva], a person younger than seventeen years of age, by touching the anus or sexual organ of [Eva]" with the intent to arouse or gratify his sexual desire.

Section 21.11(c)(1) includes a requirement that the touching occur with the specific intent to "arouse or gratify the sexual desire of any person" in recognition that "legitimate, non-criminal, contact may occur between parents, nurses, doctors, or other care-givers and a child, particularly a young child, on the relevant body

8

parts." *Caballero v. State*, 927 S.W.2d 128, 130 (Tex. App.—El Paso 1996, pet. ref'd). The offense "does not require that the arousal or gratification actually occur." *Id.* Instead, the offense is "complete upon the contact accompanied by the requisite intent." *Id.* at 130–31; *see Scott v. State*, 202 S.W.3d 405, 407 (Tex. App.—Texarkana 2006, pet. ref'd) (stating that indecency with child offense "requires proof of the accused's intent to engage in the proscribed contact, rather than intent to bring about a particular result").

"[T]he requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances." *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Extraneous acts of misconduct against other children can be relevant to prove a defendant's specific intent. *See Morgan v. State*, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985). "No oral expression of intent or visible evidence of sexual arousal is necessary." *Scott*, 202 S.W.3d at 408.

The uncorroborated testimony of the child or an outcry witness is sufficient to support a conviction for indecency with a child. *Gonzalez*, 522 S.W.3d at 57; TEX. CODE CRIM. PROC. art. 38.07. The State has no burden to present any corroborating or physical evidence. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The complainant's description of what happened "need not be

9

precise, and she is not expected to express herself at the same level of sophistication as an adult." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.); *see Jones*, 428 S.W.3d at 169 ("[A]s long as the child communicates to the jury that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient.").

In September 2017, thirteen-year-old Eva disclosed to her Aunt Oralia that Lopez "had been touching her inappropriately in her private areas," specifically her breasts and genitals, over her clothes since she was three years old.

Tuesday Sowers spoke with Eva after her outcry, obtained a history, and conducted a medical exam. Eva disclosed that Lopez had been "sexually harassing" her. Eva explained that "sexually harassing" meant "touching [her] inappropriately, which is what he does." She further explained that Lopez liked "to grab [her] boobs or [her] butt," and he touched her over her clothes. She disclosed that Lopez tried to touch her under her clothes once, but she did not let him. Sowers also testified that it is "very common" for children to make a partial disclosure or partial outcry.

Justine Smith conducted Eva's forensic interview. Eva disclosed some sexual abuse, but Smith believed that Eva was in the "partial disclosure" stage of disclosure and that "it appeared that [Smith] was not getting a full account of what occurred." Eva "kept saying I know more happened, I'm just not remembering what that was." Smith testified that being in the "partial disclosure" stage is common for children

10

disclosing sexual abuse.[4] She also testified that children commonly have "gaps in memory" because a child may "suppress it or they block it out or they don't feel comfortable telling you in the room," so instead "they say that they don't remember."

On cross-examination, defense counsel asked Smith about various statements Eva made during the forensic interview. Counsel and Smith had the following exchange:

> Q. When you spoke to [Eva], in her disclosure, would you consider that as being, I guess, the statement of being sexually harassed? Do you recall that?
>
> A. Not harassed, no.
>
> Q. But she told you that, my dad was harassing me.
>
> A. That was her description but then her actual account was not harassment.
>
> Q. Right. But my mom told me, no, it was sexual assault. That's what her response was, right?
>
> A. Correct.
>
> Q. So instead I was sexually—I was harassed. Oh, no, wait. My mom said it was assault. So we have a—we have some sort of influence. [As an] experienced interviewer, there's some sort of influence from another adult, right? She's saying my mom told me this.
>
> A. Her mom educated her on what it actually was.

---

[4] Dr. Whitney Crowson, a staff psychologist at the Harris County Children's Assessment Center, testified that "[i]t is common for [children] to not give a complete disclosure at first." Children often do not know which details are relevant, they might not be comfortable talking about details, they might be embarrassed, or they might "test the waters to see what the reaction is going to be, if they're going to be supported, believed, or dismissed." A partial disclosure does not mean a child is lying or that they are being coached.

Smith agreed with defense counsel that Eva did not disclose any penetration or touching under her clothes during the forensic interview, but Eva did mention an incident where Lopez came into her bedroom, tried to touch her breast, and when Eva moved to prevent that from happening, he instead "grazed" her vagina.

Defense counsel also asked Smith about a statement Eva made that Lopez owed her mother a lot of money and that "if we got that money, we could buy a house."[5] Smith agreed that she does not "have a lot of interviews where that occurs," and she further agreed that she found the statements "odd." [6] She also agreed that it was possible that "somebody would be motivated to make a false outcry for money." On redirect, Smith testified that she did not "have any evidence" that Eva had been coached, and she agreed that someone could "owe money and still be sexually abusing a child at the same time."

Approximately one year after her initial outcry, Eva met with a prosecutor, a child advocate, and paralegal Nicole Rojas to discuss what had happened to her.

---

[5]     The State suggested that Eva's statements about Lopez owing her mother money may have referred to alimony payments.

[6]     Dr. Sheila Bailey, a psychologist who testified on Lopez's behalf, also agreed that this was an odd statement for a child of Eva's age to make. She testified: "That would not be something that a 13-year-old would say unless they were complicit. Now, a 7- or 8-year-old, it may be different; but a 13-year-old, you know, they're thinking how are we gonna—how am I going to benefit. Well, you'll benefit because you'll get the house." Dr. Bailey agreed that this could be "indicative of either outside influence from a mom or anybody else."

12

Rojas testified concerning disclosures that Eva made during this meeting. Eva "described different kinds of abuse starting as young as 3 years old and occurring until shortly before she outcried at 13." Some of these events were consistent with Eva's initial outcry, that is, "contact over the clothes where [Lopez] would touch her breasts or her vagina and her butt."

But Eva also disclosed more detailed, and more serious, instances of abuse than what she had discussed with Oralia, Sowers, and Smith. During the meeting with Rojas, Eva described the first instance of abuse, when she was three years old, as "being on the bed and [Lopez] taking off her pants and his pants and he would put his penis against her vagina." Eva disclosed that when she was four years old, Lopez made her watch a pornographic video of a woman performing oral sex on a man and then made Eva perform the same act on him, stating that he "wanted her to beat the girl in the video." Eva also described an incident where Lopez pulled her pants down while she was lying on her stomach on a bed and he "put his finger up her butt was her words." As Eva aged, "it was more touching," and "she said he would do it all the time, any chance he got."

Rojas testified that it was not uncommon for children to disclose only "a little bit" of abuse at first due to fear and concern that both they and their abuser will get into trouble. She stated: "It can be a very confusing relationship; but as time goes on and they feel more stable, they'll disclose more information." Rojas did not believe

that Eva's "story changed" from her initial outcry to the meeting with Rojas and the prosecutor; rather, she believed that Eva "felt more comfortable to disclose more."

Eva, who was nineteen years old at the time of Lopez's trial, recounted several instances of sexual abuse during her trial testimony. She testified that Lopez attempted to penetrate her when she was three or four years old. On another occasion when she was around this same age, Lopez "put a finger up [her] butt" three separate times. Lopez placed his mouth on Eva's vagina "a few times" beginning when she was three or four years old. On a daily basis, Lopez would request that Eva bring him something, and when she would come close to hand it to him, he would "flick his fingers between [her] legs" and touch her vagina. This occurred up until Eva was thirteen. Eva also recalled an instance where Lopez showed her a video of a woman performing oral sex on a man and told her to "do what she was doing," which Eva attempted to do. On one of the last times that Lopez touched Eva, he "barged into" her bedroom while she was changing clothes after school, pushed her down onto the bed, and tried to pull her pants down, but she "was fighting him off." She then stated, "A lot of it could be passed off as play fighting, but I knew it wasn't. . . . Because it never was."

Eva testified that she loved Lopez because he was her father and they "did a lot of fun things together," but she "was always in fear that he was going to touch [her] when [they] were on the road or make jokes that would make [her]

14

uncomfortable." Eva was scared and "just got really good at hiding it from the beginning," and no one could tell that anything was amiss. When asked why she was scared, Eva testified:

> I didn't know what he would do to me or my mom. And at one point, I felt like I had to hide it because I had heard that he was paying my mom. He was giving my mom money for things that were his under her name, and I wanted her to get all her money back before I said anything so that we wouldn't have to contact him anymore.

On one early occasion, Lopez told Eva "don't tell anybody because then they'll take me away and you won't see me anymore." Eva "didn't tell anybody because we were still having good times here and there."

The prosecutor asked Eva why she did not disclose, in her forensic interview, all the abuse that had happened to her. She responded, "I don't feel like people are ready to hear everything. . . . I am perfectly fine saying, you know, I went through this in my childhood but to go into detail, no, it's not easy." She also testified: "It usually just comes out as my dad touched me when I was little or for from this age to this age basically. I don't ever go into detail. Actually, honestly, I avoid it." When asked how she felt while testifying "in front of a bunch of people," Eva responded "bad." When asked why, she stated, "Because I wish it didn't happen, and I wish they didn't have to hear it."

On cross-examination, Eva testified that she did not have a conversation with her mother about the sexual abuse. Instead, Anaih and Oralia told Eva's mother

about her disclosure. Eva avoided speaking with her mother because she "didn't feel like [her mother] was ready to hear anything." She overheard her mother use the word "molestation," a word that Eva did not know at the time she made her outcry. Eva used the phrase "sexual harassment" when describing what had happened to her because that was a phrase that she had heard at school.

Eva testified that Lopez touched her breasts, her vagina, and her anus, both over and under her clothes, and that this occurred on multiple occasions beginning when she was three years old and ending when she was thirteen years old. It was within the province of the jury to believe Eva's testimony. *See Dunham*, 666 S.W.3d 482 (stating that factfinder is sole judge of witness credibility and weight to be given to witness testimony) (quotations omitted). Her testimony alone is sufficient to support a conviction for indecency with a child. *See Gonzalez*, 522 S.W.3d at 57; TEX. CODE CRIM. PROC. art. 38.07; *see also* TEX. PENAL CODE 21.11(a)(1), (c)(1).

On appeal, Lopez makes three arguments for why Eva's trial testimony is insufficient to establish the elements of indecency with a child by contact beyond a reasonable doubt. He first argues that Eva told both Oralia and Smith that Lopez "sexually harassed" her, not "sexually assaulted" her.

Eva was thirteen years old at the time of her initial outcry. Although Eva used the phrase "sexually harassed," she explained to Oralia that Lopez touched her breasts and genitals over her clothes, an allegation that she repeated during her exam

16

at Texas Children's Hospital and during her forensic interview. She testified that while she was not familiar with the word "molestation" at the time of her outcry, she had heard the phrase "sexual harassment" at school. We do not fault a thirteen-year-old child for not appreciating that there might be a legal distinction between "sexual harassment" and "sexual assault." The fact that Eva initially described the abuse as "sexual harassment" does not outweigh her trial testimony establishing that Lopez touched her within the meaning of the indecency with a child statute. *See Jones*, 428 S.W.3d at 169 ("[A]s long as the child communicates to the jury that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient.").

Lopez next argues that Eva's mother coached her, pointing to Eva's statement to Smith that "her mother told her that [Lopez] had sexually assaulted her" and Eva's claims that Lopez owed her mother money and that they could buy a house with the money Lopez owed. Any contention that Eva's mother coached her to make a false outcry against Lopez is entirely speculative. Eva testified that she did not discuss the abuse allegations with her mother. She also testified that she had heard Lopez owed money to her mother, and she wanted her mother to get all her money back before she made any disclosures "so that we wouldn't have to contact him anymore." As the sole judge of witness credibility, the jury was entitled to believe Eva's testimony on this matter. *See Dunham*, 666 S.W.3d at 482.

17

Finally, Lopez contends that no evidence establishes that he touched Eva with the specific intent to arouse or gratify his sexual desire. He argues that his actions were "simply rough play by a father who was playing with his daughter who may not have enjoyed the rough play," and the State did not demonstrate that Lopez "received sexual gratification from the rough play."

The State was not required to show that touching Eva actually aroused Lopez's sexual desire. *See Scott*, 202 S.W.3d at 408 ("No oral expression of intent or visible evidence of sexual arousal is necessary."); *Caballero*, 927 S.W.2d at 130–31 (stating that offense of indecency with child is "complete upon the contact accompanied by the requisite intent"). Furthermore, Eva testified that the touching occurred both over and under her clothes on multiple occasions spanning a time period of ten years. On at least some occasions, Lopez partially undressed Eva before touching her. Eva also testified that Lopez touched her vagina with his hands and his mouth. The jury could have reasonably determined that such repeated and long-lasting behavior was not innocent or "rough play," but was instead done to arouse or gratify his sexual desire. *See McKenzie*, 617 S.W.2d at 216 ("[T]he requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances."); *Gonzalez*, 522 S.W.3d at 57 (concluding that sufficient evidence existed to support conviction when child complainant testified that defendant "pulled her underpants aside to put

18

his mouth and tongue on her genitals" and "unbutton[ed] her shorts and [stuck] two fingers into her vagina").

Considering the evidence in the light most favorable to the verdict, a rational factfinder could have found the essential elements of the offense of indecency with a child by contact beyond a reasonable doubt. *See Baltimore*, 689 S.W.3d at 341; TEX. PENAL CODE 21.11(a)(1), (c)(1). We hold that sufficient evidence supports the conviction.

We overrule Lopez's first issue.

**Admission of Extraneous Offense Evidence**

In his second issue, Lopez contends that the trial court erred by allowing Vincent to testify that Lopez allegedly committed acts of sexual misconduct against him. Lopez argues that Vincent's testimony was not sufficient to support a jury finding that Lopez committed the offense of indecency with a child against Vincent beyond a reasonable doubt.

**A.      Standard of Review and Governing Law**

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021); *Buxton v. State*, 526 S.W.3d 666, 687 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (op. on reh'g) (applying abuse of discretion standard in reviewing admissibility of extraneous-offense evidence). A trial court abuses its discretion

19

when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). We will uphold a trial court's ruling on admissibility so long as it is within the zone of reasonable disagreement. *Inthalangsy*, 634 S.W.3d at 754.

Ordinarily, evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion, the person acted in accordance with that character. TEX. R. EVID. 404(b)(1); *State v. Nunez*, 704 S.W.3d 598, 624 (Tex. App.—Houston [1st Dist.] 2024, pet. ref'd) ("An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused.") (quotations omitted). The general rule is that "a defendant may be tried only for the offense charged and not for any other crimes or for being a criminal generally." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019). However, extraneous offense evidence may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

The Texas Legislature has enacted an exception to this general rule that applies in prosecutions for certain offenses, including indecency with a child, and allows admission of evidence that the defendant has committed sexual offenses against a child other than the complainant in the charged case. TEX. CODE CRIM.

20

PROC. art. 38.37, § 2(a)–(b). Article 38.37, section 2(b) provides that in a prosecution for an indecency with a child offense:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2)[7] may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

*Id.* art. 38.37, § 2(b); *Buxton*, 526 S.W.3d at 687–88 (stating that article 38.37 creates exception to Rule 404(b) and Legislature "specifically recognized" that article 38.37 evidence "is, by definition, propensity or character evidence and that it is admissible notwithstanding those characteristics") (quoting *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)).

Article 38.37 contains procedural safeguards, including a requirement that before the State may introduce evidence described by section 2, the trial court must:

(1)     determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

(2)     conduct a hearing out of the presence of the jury for that purpose.

---

[7]     Subsection (a)(1) lists eight provisions of the Penal Code relating to sexual offenses involving children, including indecency with a child, sexual assault of a child, and aggravated sexual assault of a child. TEX. CODE CRIM. PROC. art. 38.37, § 2(a)(1)(C)–(E). Subsection (a)(2) refers to "an attempt or conspiracy to commit an offense described by Subdivision (1)." *Id.* art. 38.37, § 2(a)(2).

TEX. CODE CRIM. PROC. art. 38.37, § 2-a; *Buxton*, 526 S.W.3d at 688; *see also Keller v. State*, 604 S.W.3d 214, 226 (Tex. App.—Dallas 2020, pet. ref'd) (noting that at article 38.37 hearing, State is not required to prove that defendant committed separate offense beyond reasonable doubt).

Evidence admitted under article 38.37 "may consist solely of the other child's testimony about the other sex offense." *Castillo v. State*, 573 S.W.3d 869, 880 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see Gonzales v. State*, 477 S.W.3d 475, 480–81 (Tex. App.—Fort Worth 2015, pet. ref'd) (concluding that trial court did not abuse its discretion in determining evidence was adequate to support jury finding of extraneous offenses beyond reasonable doubt based solely on child's testimony).

## B. Analysis

Lopez argues that the trial court erred by allowing Vincent's testimony concerning Lopez's alleged extraneous acts of sexual abuse committed against him because Vincent's testimony was not adequate to support a finding by a jury that Lopez committed the separate offense of indecency with a child beyond a reasonable doubt as required by article 38.37. Although Lopez acknowledges that the testimony of a child witness alone is sufficient to support a conviction for indecency with a child, he argues that Vincent's testimony should not be considered sufficient because Vincent never told anyone about the alleged sexual abuse and never participated in a forensic interview.

22

In response, the State contends that Lopez failed to preserve this issue for appellate review, arguing that Lopez's objection to Vincent's testimony at the article 38.37 hearing does not comport with the complaint that he raises now on appeal. Alternatively, the State argues that even if Lopez had properly preserved error, the trial court did not err by allowing Vincent's testimony. The State argues that the trial court, as the sole judge of credibility at the article 38.37 hearing, reasonably could have found that Vincent's testimony was sufficient for a jury to find the separate offense beyond a reasonable doubt even though Vincent did not disclose the alleged abuse and never participated in a forensic interview. We first turn to the State's preservation argument.

To preserve a complaint for appellate review, the record must show that (1) the complaining party made the complaint to the trial court by timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the court aware of the complaint, unless the specific grounds were apparent from the context; and (2) the trial court ruled on the request or the complaining party objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a). Preservation of error is a "systemic requirement." *Null v. State*, 690 S.W.3d 305, 318 (Tex. Crim. App. 2024). Requiring a timely, specific objection serves two purposes: (1) it informs the trial court of the basis of the objection and affords the court an opportunity to rule on it; and (2) it affords opposing counsel an opportunity to

23

respond to the complaint. *Id.* (quoting *Williams v. State*, 662 S.W.3d 452, 460 (Tex. Crim. App. 2021).

The complaining party need not use "magic words" or refer to a specific statute to make a valid objection. *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). Instead, "[t]he objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Id.*; *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (stating that objecting party must "let the trial judge know what he wants [and] why he thinks he is entitled to it" and must do so "clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it") (quotations omitted). Additionally, the complaint raised on appeal must comport with the objection made at trial. *Clark*, 365 S.W.3d at 339. If the appellate complaint does not comport with the trial objection, "nothing is presented for review." *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017).

During the State's case-in-chief, the trial court held a hearing outside the presence of the jury to determine whether Vincent could permissibly testify under article 38.37 that Lopez also committed acts of sexual abuse against him. Vincent testified that he was either three or four years old the first time he remembered Lopez behaving inappropriately with him. Vincent testified that most of Lopez's inappropriate behavior occurred between the ages of four and seven, when Lopez

24

met Eva's mother, but Lopez also performed certain acts on Vincent around "10 to 15 times" between the ages of four and fifteen. On one occasion, Lopez attempted penetration, but he was interrupted by Vincent's grandmother returning home. Lopez did not cross-examine Vincent during the article 38.37 hearing.

After Vincent's testimony, the trial court asked whether there was "[a]ny argument from the defense on your motion?" One of Lopez's attorneys stated, "My only argument is it's not similar in language according with the extraneous. They are different ages. That's my only argument." Lopez's other attorney then stated, "Your Honor, we're arguing that the acts alleged is not similar enough in nature to show conformity or motive." Defense counsel and the trial court then discussed whether article 38.37 requires similarity between the charged offense against Eva and the separate offense against Vincent, and the trial court concluded that the statute did not require similarity. The court then stated: "I find that the evidence that I heard would be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt, and I'm going to allow the jury to hear it."

We agree with the State that Lopez's appellate complaint concerning Vincent's extraneous offense testimony does not comport with the objection to his testimony made at trial. At trial, defense counsel objected that Vincent's testimony was not admissible under article 38.37 because the offenses that he described were

25

not similar to the charged offense against Eva. Counsel did not argue that the trial court should exclude Vincent's testimony because it would not be adequate to support a finding by the jury that Lopez committed the separate offense against Vincent beyond a reasonable doubt, which is the complaint he now raises on appeal. We conclude that because Lopez's appellate complaint does not comport with the objection he made at trial, Lopez failed to preserve his complaint about Vincent's extraneous offense testimony for appellate review. *See id.*; *Clark*, 365 S.W.3d at 339.

We overrule Lopez's second issue.

## Propriety of Outcry Witness

Finally, in his third issue, Lopez contends that the trial court erred by allowing Rojas to testify as a second outcry witness. He argues that Eva's unrecorded disclosure of additional acts of sexual abuse more than a year after her initial outcry were not reliable and therefore constituted inadmissible hearsay.

### A. Governing Law

Generally, an out-of-court statement offered in evidence to prove the truth of the matter asserted constitutes inadmissible hearsay. TEX. R. EVID. 801(d), 802. Code of Criminal Procedure article 38.072 creates an exception to this general rule for outcry statements made by a child complainant in a prosecution for a sexual offense against a child. TEX. CODE CRIM. PROC. art. 38.072, § 2(a)–(b); *Bays v. State*,

396 S.W.3d 580, 585 (Tex. Crim. App. 2013). Under the statute, an outcry witness may testify to a statement by the child that describes the alleged offense if the witness is "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense or extraneous crime, wrong, or act." TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(1)–(3); *Bays*, 396 S.W.3d at 585.

To qualify as an outcry statement, "the disclosure must include more than a general allusion that something in the area of child abuse was going on." *Perez v. State*, 695 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2024, pet. ref'd) (quotations omitted); *Buentello v. State*, 512 S.W.3d 508, 517 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (stating that disclosure must "in some discernible manner describe[] the alleged offense") (quotations omitted). The outcry statement is "event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). Thus, more than one outcry witness may testify if they testify about different events. *Id.* "There may be only one outcry witness per event." *Id.*

Procedural requirements must be met for the outcry statement to be admissible. The party intending to offer the outcry statement must notify the adverse party of its intention by providing the name of the intended outcry witness and a written summary of the statement. TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(1). The trial court must hold a hearing outside the presence of the jury and find that "the statement is reliable based on the time, content, and circumstances of the statement."

27

*Id.* art. 38.072, § 2(b)(2). And the child must testify or be available to testify at the proceeding. *Id.* art. 38.072, § 2(b)(3).

"The phrase 'time, content, and circumstances' refers to 'the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of that statement.'" *Buentello*, 512 S.W.3d at 517 (quoting *Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). The focus is on whether the outcry statement is reliable, not whether the outcry witness is credible. *Perez*, 695 S.W.3d at 849; *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011). The trial court considers "the circumstances of the outcry, not the abuse itself," and it makes reliability determinations on a case-by-case basis. *Perez*, 695 S.W.3d at 849.

The court may find the outcry statement reliable "even if the statement is vague or contains inconsistent details about the alleged sexual abuse." *Id.*; *Buentello*, 512 S.W.3d at 519 ("[I]nconsistency in a child's outcry and later trial testimony is a matter of credibility and goes to the weight of the evidence, not the reliability of the statement or its admissibility.") (quotations omitted). An outcry may be reliable even if no corroboration or physical evidence exists. *Buentello*, 512 S.W.3d at 519.

### B. Analysis

On appeal, Lopez argues that Eva's disclosures to Rojas were not reliable "because she made them in an unrecorded trial preparation meeting over a year after

28

her initial outcry" to her aunt. He argues that in between the two disclosures, Eva's mother had time to influence Eva "to fabricate more lurid allegations of sexual abuse to punish [Lopez] for his failure to pay the debts owed to her." He further argues that Eva's "additional disclosures of even more serious sexual abuse were not reliable" when three other witnesses, including Smith and Sowers, testified that Eva disclosed only touching over her clothes. He casts doubt on the notion that a year after "gather[ing] the courage" to make her initial outcry and being interviewed through the investigative process, Eva would feel "safe enough to disclose even more serious abuse from her father to a prosecutor's paralegal."

The State again responds that Lopez failed to preserve this contention for appellate review because his complaint on appeal does not comport with his trial objection. At trial, Lopez did not object to the reliability of Eva's disclosure to Rojas; rather, he objected that Rojas was not the proper outcry witness because she was merely observing the meeting with Eva, not conducting it. Alternatively, the State argues that the trial court did not abuse its discretion by determining that Eva's disclosure to Rojas was reliable, nor was Lopez harmed by Rojas's outcry testimony because Eva testified to the same acts during her trial testimony.

Three witnesses testified at the outcry hearing: Anaih, Oralia, and Rojas. Although Eva first disclosed that Lopez had sexually abused her to Anaih, Eva did not provide details about the abuse, and the trial court determined that Anaih was

not a proper outcry witness. Eva did provide details about the abuse to Oralia, telling her that Lopez had been touching her breasts and genitals over her clothes since she was three years old, and defense counsel agreed that Oralia was a proper outcry witness.

Rojas testified that she had worked as a paralegal in the child abuse division of the Harris County District Attorney's Office for several years. As part of her job duties, she attended meetings that prosecutors had with child witnesses and took notes. Rojas testified that her role was generally note-taking, but she would speak during these meetings, and sometimes she would ask clarifying questions.

Rojas, a prosecutor,[8] and a child advocate met with fourteen-year-old Eva in 2018, approximately one year after Eva's initial outcry. Before this meeting, Eva's disclosure of abuse had been limited to "touching over the clothes." At the meeting, Eva disclosed additional allegations of sexual abuse that she had not previously disclosed. These additional allegations went beyond touching over the clothes and included allegations that Lopez touched her genitals and anus under her clothes and allegations that Lopez forced her to perform oral sex. During the meeting, "the prosecutor and [Rojas] asked [Eva] if she had told anyone else those details and she said she had not." Rojas agreed that it was "common for a child to make more

---

[8]      By the time of Lopez's trial, the prosecutor involved in the 2018 meeting with Eva had been elected as a district court judge in Harris County.

30

extensive disclosures of sexual abuse at [a] later time than what was initially reported."

On cross-examination, Rojas agreed that the prosecutor was the one who conducted the interview of Eva, while Rojas took notes and "asked questions, as well." Rojas testified that the meeting with Eva was not recorded, stating that "[i]t's not usually in our protocol to record the meetings that we have with child witnesses before trial." Rojas did not believe that Eva was referred for an additional forensic interview following her more detailed disclosures.

Defense counsel then argued that Rojas was not a proper outcry witness in part because she had not been trained "to do this type of investigation." Counsel also argued that Rojas was not conducting the interview with Eva; instead, the prosecutor was conducting the interview, and Rojas was merely an observer. In counsel's view, the proper outcry witness for Eva's additional disclosures was the prosecutor, not Rojas. Defense counsel did not argue that Eva's statements during the 2018 meeting were unreliable, and he did not raise that as a basis for objecting to Rojas as an outcry witness. The trial court noted that nothing in article 38.072 "requires [the outcry witness] being a person that was actually asking the majority of the questions or that the person be trained in interviewing," so the court found that Rojas "is also an appropriate outcry witness as to those [more detailed] allegations."

31

We agree with the State that Lopez did not object at the outcry witness hearing on the basis that Eva's 2018 statements to Rojas were unreliable. Rather, Lopez implicitly acknowledged that the more detailed disclosures were reliable when he argued that the prosecutor conducting the interview of Eva would be a proper outcry witness for those statements. To preserve an appellate complaint about reliability of an outcry statement, the defendant must object on this basis in the trial court. *See Duran v. State*, 163 S.W.3d 253, 256 (Tex. App.—Fort Worth 2005, no pet.) (concluding that defendant failed to preserve appellate complaint that outcry statement was unreliable when he did not object on this basis in trial court). Because Lopez did not do so here, but instead objected on the basis that Rojas should not be an outcry witness because she was merely observing—and not conducting—the interview of Eva, we conclude that Lopez did not preserve his complaint for appellate review. *See id.*; *see also Hallmark*, 541 S.W.3d at 171 (stating that "nothing is presented for review" when appellate complaint does not comport with trial objection).

We overrule Lopez's third issue.

## Conclusion

We affirm the judgment of the trial court.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).