

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00192-CR

Jason **AUSTRAW-OVERSTREET**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR11346
Honorable Jennifer Peña, Judge Presiding

Opinion by:   Adrian A. Spears II, Justice

Sitting:   Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: July 30, 2025

AFFIRMED

After a jury trial, Jason Austraw-Overstreet was found guilty of continuous sexual assault of a young child and was sentenced to thirty-five years of imprisonment. On appeal, he argues that he received ineffective assistance of counsel. We affirm.

## BACKGROUND

At trial, there was evidence that Austraw-Overstreet sexually abused his daughter, S.S., from the age of three until she was removed from her parents' care at the age of five. S.S. testified

that Austraw-Overstreet abused her every other day and that Austraw-Overstreet told her not to tell anyone about what was happening. S.S. testified she believed what was happening was normal and believed her mother knew about it. S.S. testified that when she was three and four years old, Austraw-Overstreet used his fingers and cream to insert his fingers in her vagina. When she turned five years old, Austraw-Overstreet started using his penis.

In 2019, when she was six years old, S.S. was adopted by her maternal grandparents. Her maternal grandmother testified that after the adoption, S.S. had nightmares and frequent anxiety attacks. In 2022, during a family vacation, S.S. told her aunt about being sexually abused by Austraw-Overstreet. When S.S. made this first outcry to her aunt, she was eleven years old.

Testifying in his own defense, Austraw-Overstreet denied all the allegations of sexual abuse.

## DISCUSSION

Austraw-Overstreet argues that he was denied effective assistance of counsel in violation of the Sixth Amendment. To prevail on an ineffective assistance of counsel claim, an appellant must satisfy the two-element test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show his trial counsel's performance was "deficient." *Id*. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Second, an appellant must show that "the deficient performance prejudiced the defense." *Id*. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Unless an "appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). In order to satisfy the first prong, an "appellant must prove, by a preponderance of the evidence, that trial counsel's

performance fell below an objective standard of reasonableness under the prevailing professional norms." *Id*. To prove prejudice under the second prong, an "appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Id*.

"An appellate court must make a 'strong presumption that counsel's performance fell within the wide range of reasonably professional assistance.'" *Id*. (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency *must be affirmatively demonstrated in the trial record*; the court must not engage in retrospective speculation." *Id*. (emphasis added); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Lopez*, 343 S.W.3d at 142-43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id*. at 143; *see Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) (explaining that where the record is silent as to the reasons for trial counsel's conduct, counsel is entitled to "the benefit of the doubt," and an appellate court must assume that counsel "had a strategy if any reasonably sound strategic motivation can be imagined"). Further, "[i]n making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez*, 343 S.W.3d at 143.

"In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal." *Id*. "However, this is a difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below

an objective standard of reasonableness *as a matter of law*, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id*. (emphasis added). The court of criminal appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Id*. "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id*. (quoting *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). "Unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Id*.

Here, Austraw-Overstreet raises his ineffective assistance claim for the first time on appeal. He did not file a motion for new trial or any other post-judgment motion complaining of his trial counsel's performance or develop a record applicable to his ineffective assistance claim. He first argues that after learning a member of the jury was "likely familiar with" a detective who was listed as a witness for the State, his trial counsel should have identified that juror or made a record "from which the parties or the trial court could rationally determine whether" the juror should be removed from the jury. The record reflects that before the jury was sworn in by the trial court, the trial court disclosed the following information to the parties:

> COURT: So, it has come to my attention this morning that there's an SAPD officer on the jury.
>
> PROSECUTOR 1: That what, Judge?
> PROSECUTOR 2: An SAPD officer on the jury.
>
> COURT: So, what I propose—actually it was suggest from [defense counsel]—is to give him your witness list of any officers to see if he knows any of those officers.

PROSECUTOR 2:     Okay. There's two, Judge. So, we can—Judge, we have notes on that list. May I just write down—

COURT:     Just the names. I think she just needs the names.

PROSECUTOR 2:     Okay.

The trial court later reported what had happened:

COURT:     Y'all come on up here. Okay. So, the deputy went back there and asked the juror if he knew those people. And this is the response—go ahead, Deputy.

BAILIFF:     So, he does not know David Vaughn. But he may know Jennifer Cardenas from SVU. He doesn't know if it's the same one because there's so many. And if it is the same one, she went to a call, but that was years ago. And it wasn't even, like, a call. Like, he literally just phoned her and asked her a few questions, but that was it. That was the extent. He knows neither one on a personal level, nor has [he] gone out with either one of them on a personal level.

COURT:     Okay. Attorneys?

PROSECUTOR 2:     Judge, we—based off that information, I think he's fine to sit on this panel. You know, the sheet did have his employment on it. And, so, we'd argue that there is no evidence supporting a strike for cause.

COURT:     We're not even there, State. Counsel?

DEFENSE:     Well, I understand about the jury information card. He was—I think—I believe if I remember correctly, he was silent during the entire voir dire. I guess my only question is: He said he's not sure. And if he's not sure, I just don't want to be in a position where all of a sudden, maybe if through passing the hallway or actually seeing somebody, he realizes that, Oh, yes, this is the same person and I might know them better.

COURT:     Objection will be noted. Overruled. We're going to proceed.

On appeal, Austraw-Overstreet argues that the bailiff "possessed as much incentive to white-wash, or minimize, the relationship between Detective Cardenas and the objectionable juror as any other law enforcement agent would." There is absolutely nothing in the record to support

this assertion.[1] Thus, Austraw-Overstreet has not shown that any ineffectiveness on the part of his trial counsel was firmly founded in the record. *See Tanner v. State*, 707 S.W.3d 371, 377 (Tex. Crim. App. 2024) ("Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.").

Austraw-Overstreet next argues that his trial counsel was deficient for failing to object to hearsay statements made by the complainant to her aunt and to her maternal grandmother about the sexual abuse she suffered. Again, Austraw-Overstreet failed to develop a record in support of his ineffective assistance claim. Under similar facts, the court of criminal appeals has held that because the ineffectiveness of trial counsel was not firmly founded in the record, the appellant had failed to show his trial counsel was deficient. In *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011), the court of criminal appeals considered whether the court of appeals erred in concluding the appellant was denied effective assistance of counsel:

> According to the court of appeals, article 38.072 allows the admission of a hearsay statement made to an outcry witness by certain abuse victims, including child victims of a sexual offense. The outcry witness is the first person over the age of 18, other than the defendant, to whom the child spoke about the offense. The statement must be "more than words which give a general allusion that something in the area of child abuse is going on"; it must be made in some discernable manner and is event-specific rather than person-specific. Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events. There may be only one outcry witness per event. In order to invoke the statutory exception, the party intending to offer the statement must notify the adverse party of the names of the outcry witnesses and a summary of their testimonies, the trial court must conduct a reliability hearing of the witnesses outside the presence of the jury, and the child victim must testify or be available to testify at the proceeding.
>
> The court of appeals noted that, although the state gave notice of its intention to present the outcry testimony of both Maria Benavides and Claudia Mullin, the state

---

[1] We note that in his brief, Austraw-Overstreet points to a document he has included in the appendix to his brief. However, we are not authorized to consider any item that is not part of the record on appeal. *See Johnson v. State*, 624 S.W.3d 579, 585 (Tex. Crim. App. 2021) ("An appellate court cannot consider an item that is not part of the record on appeal."); TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record.").

also presented the hearsay testimony of a third witness, Toni Sika. No reliability hearing was conducted, nor was one requested by trial counsel. All three witnesses testified to the same events; thus, the testimonies of at least two outcry witnesses constituted inadmissible hearsay and were improper bolstering of B.R.'s testimony, serving solely to enhance B.R.'s credibility—the sole issue in this case—in violation of rule 613(c) of the Texas Rules of Evidence. The record is silent as to trial counsel's reason for not objecting to the improper testimony, but the court of appeals found that no reasonably sound trial strategy was plausible. It therefore concluded that counsel's performance fell below an objective standard of reasonableness.

The court of appeals also found counsel's performance deficient for failing to object to direct opinion testimony by Claudia Mullin and Officer Parrie as to B.R.'s truthfulness. Direct opinion testimony about the truthfulness of another witness, without prior impeachment, is inadmissible as it does more than assist the trier of fact to understand the evidence or to determine a fact in issue. The court of appeals found that, because there was no reasonable strategy for not opposing the admission of the opinion testimony about complainant's credibility, the sole issue at trial, trial counsel's failure to object to it fell below a reasonable standard of performance.

The court of appeals then conducted a harm analysis and concluded that "the jury was exposed to a barrage of inadmissible testimony concerning B.R.'s credibility, when the sole issue at trial was her credibility. . . . We can only reasonably conclude that the testimony of B.R. was bolstered immeasurably by the inadmissible testimony. . . ." The court of appeals concluded that appellant was prejudiced by the deficiency and had met his burden of proof under the *Strickland/Hernandez* standard.

*Id*. at 140-41 (citations omitted). In reviewing this decision, the court of criminal appeals emphasized that it is a "rare case in which trial counsel's ineffectiveness is apparent from the record." *Id*. at 143. The court stressed that "the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id*. The court explained that it had "repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Id*.

The court of criminal appeals then explained why the court of appeals erred in determining trial counsel was ineffective:

> The record is silent as to why trial counsel failed to object to the outcry-witness testimony. The record could have been supplemented through a hearing on a motion for new trial, but appellant did not produce additional information about trial counsel's reasons for allowing all three outcry witnesses to give similar testimony about the same events or for allowing opinion testimony about the credibility of the complainant, both without objection. Appellant has thus failed to meet his burden under the first prong of *Strickland*, and the court of appeals erred in finding otherwise.

*Id*. at 143-44. Similarly, in this case, the record is silent as to why trial counsel failed to object to the testimony in question. The reasons why trial counsel failed to object could have been developed in a motion for new trial hearing. Without a developed record, we assume counsel had a strategy in failing to object to the testimony. *See id*. Thus, as in *Lopez*, we conclude Austraw-Overstreet failed to meet his burden under the first prong of *Strickland*. *See Lopez*, 343 S.W.3d at 143-44; *see also Strahan v. State*, 617 S.W.3d 198, 206-07 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (overruling ineffective assistance claim related to an alleged failure to object to testimony regarding a witness's credibility where the record was silent on trial counsel's reasoning).

Finally, Austraw-Overstreet argues that his trial counsel was deficient in failing to object to a misstatement of the law made during the State's closing argument. Specifically, he points to the prosecutor's statement that the State was not allowed to offer in evidence the video recording of the complainant that was made by a forensic interviewer. In response, the State argues that it did not misstate the law in its closing argument. We agree. While the legislature narrowly permitted the introduction of outcry statements through witness testimony, the complainant's videotaped statements are not admissible. *See Bays v. State*, 396 S.W.3d 580, 592 (Tex. Crim. App. 2013) (holding that the "outcry statute does not permit admission of video-recorded statements of a complainant"). Thus, the State did not misstate the law during closing arguments.

Moreover, even if Austraw-Overstreet were correct in his assertion that the videotape was admissible, the record is silent as to why his trial counsel failed to object to the prosecutor's statement during closing argument. His trial counsel could have based his decision not to object on trial strategy. *See Tanner*, 707 S.W.3d at 377.

## CONCLUSION

We conclude that Austraw-Overstreet has not met his burden under *Strickland* to sustain his ineffective-assistance claim. Therefore, we affirm the trial court's judgment.

Adrian A. Spears II, Justice

DO NOT PUBLISH